POWERS RITCHEY, Plaintiff in Error, *v.* KEZIAH WEST, Defendant in Error.

ERROR TO ADAMS.

The decisions of the Circuit Court on questions of evidence, will not be reviewed here, unless exceptions are taken at the time, and preserved in the record.

When a person assumes the profession of physician and surgeon, the law holds him responsible for any injury arising from a want of reasonable care, skill and diligence in his practice, unless the services rendered were gratuitous.

The affidavit in support of an application for a new trial, on the ground of newly discovered evidence, must state positively that the new evidence is true.

THIS was a suit brought by defendant in error against plaintiff in error, to recover for injuries arising from the negligence and lack of skill of the plaintiff in error, in the practice of his profession of physician and surgeon. The case was tried in the Adams Circuit Court, SIBLEY, Judge, presiding.

A. LINCOLN, and ELLIOTT B. HERNDON, for Plaintiff in Error.

WILLIAMS, GRIMSHAW & WILLIAMS, for Defendant in Error.

WALKER, J.   No question can arise on the correctness of the decisions of the court below or admitting or rejecting evidence, in this case, as no exceptions were preserved in the record. We shall therefore decline their examination.

The principle is plain and of uniform application, that when a person assumes the profession of physician and surgeon, he must, in its exercise, be held to employ a reasonable amount of care and skill. For anything short of that degree of skill in his practice, the law will hold him responsible for any injury which may result from its absence. While he is not required to possess the highest order of qualification, to which some men attain, still, he must possess and exercise that degree of skill which is ordinarily possessed by members of the profession. And whether the injury results from a want of skill, or the want of its application, he will, in either case, be equally liable. This the law implies, whenever a retainer is shown ; but when the services are rendered as a gratuity, gross negligence will alone create liability.

This, then, presents the question, whether the evidence in the case establishes a want of ordinary skill, or reasonable care, in the treatment of this case. The retainer having been proved, it is not material to inquire whether the case shows gross incompetency or neglect of duty. The concurring evidence of all the physicians shows that the splints and bandages were not

properly applied. Had they extended below the wrist, the evidence seems to show that they would have confined the wrist to its proper place. It is probable that such a practice would have tended, notwithstanding the fracture, to have held the broken bone more nearly to its place until a union was formed, and thus have prevented, to some extent, if not altogether, the deformity and disability to use the hand. The physicians also agree that the splints employed were not of sufficient width, as well as too short, for the treatment of the fracture, even if they had been midway between the wrist and elbow, as he supposed. And from this evidence it would seem that there must have been a want of ordinary skill, or great negligence in the treatment of the case, in not detecting the dislocation of the wrist joint. The physicians all agree that this portion of the injury could have been easily detected by ordinary care and skill, and the fact that it had been, and was still dislocated, was afterwards detected by a person who did not profess surgery or skill in such matters, and had previously only had slight experience in cases of fractured limbs. Then, if the evidence of the medical men who were examined as witnesses, is to be credited, and it is supported by the fact that the dislocation of the joint was detected by a person professing to have no skill, there was a want of ordinary care, or skill, or both, manifested in the treatment of the case.

The medical witnesses all testify that it is customary and necessary for the surgeon to pay a second visit, for the purpose of ascertaining how the case is progressing, and whether further treatment is required, unless it be dispensed with by the patient. There was no conflict in the evidence, that the plaintiff in error was requested to return, which he agreed to do, for the purpose of further examination, on the following day, and that he never afterwards returned. Then the fact is established by the evidence, that he not only promised to return, but that it was his duty to have done so, unless notified that such attendance would be dispensed with. Then if this was a part of his professional duty, its omission establishes a want of reasonable care and diligence, which, together with his failing to comply with his agreement to return, must render him liable for all injury which has resulted from its non-observance. Had he returned, as his duty and his agreement required, in all probability the visit would have resulted in detecting the true situation of the injury, and relief might then have been obtained by the employment of the necessary surgical aid. The court therefore did right in refusing the twelfth instruction asked by plaintiff in error, as it assumed that it was not his duty to again visit defendant in error.

It is likewise urged, that the court below erred in refusing to grant a new trial, on the affidavit of newly discovered evidence. The facts alleged in the affidavit to have been newly discovered, were only cumulative. The question tried by the jury was, whether the wrist was fractured and dislocated at the time when the plaintiff in error was called to treat the injury. The theory of his defense was, that the wrist was not then injured. This evidence, which is said to be newly discovered, if it had been produced, would have only tended to show, that the wrist received no injury at the time he was called for medical advice. The evidence of the witnesses of defendant in error was, that the wrist was then injured, and from which it had never recovered, and the newly discovered evidence was only rebutting, and was cumulative to his other evidence of that character.

But if this were not true, the affidavit was fatally defective, in not stating that the evidence, said to be newly discovered, was true. If he was unable himself to swear to its truth, he should have produced the affidavit of the witnesses themselves, to satisfy the court of such truth. In an application for a new trial, because of newly discovered evidence, it is not sufficient for the party to state that he has been informed and believes that the witness will testify to the facts, but the truth of such facts must be verified by affidavit. Otherwise, but few cases would occur, in which a party might not procure some person to state that he would, on the trial, swear to the necessary facts to procure the new trial, and yet, who might, when placed on the stand, wholly fail to testify in accordance with such statement. Such a practice would be liable to great abuse, and should not, therefore, be adopted.

Upon the whole of this record we are unable to perceive any error for which the judgment of the court below should be reversed, wherefore the same is affirmed.

*Judgment affirmed.*