## MOON *v.* McRAE.

Under the allegations of the petition and the testimony in the present case, the trial judge was not authorized to conclude that the plaintiff's entire case was placed throughout on the amputation of his limb caused by the alleged negligent and unskilful treatment by the defendant as plaintiff's physician. As elements of damages claimed by the plaintiff, pain and suffering are sufficiently set forth in the declaration; and there was sufficient evidence to submit to the jury the issue as to whether, by the unskilful treatment of the defendant, the plaintiff sustained damages in consequence of such pain and suffering, notwithstanding such treatment may not have led to the loss of his limb. The court, therefore, erred in instructing the jury, in effect, that damages could not be recovered for pain and suffering resulting from unskilful treatment by the physician unless such treatment was the cause of the loss of plaintiff's limb.

Argued June 12, — Decided July 10, 1900.

Action for damages. Before Judge Reid. City court of Atlanta. February 1, 1900.

*T. W. Rucker* and *Arnold & Arnold,* for plaintiff.
*Alexander & Lambdin, Rosser & Carter & J. T. Pendleton* for defendant.

LEWIS, J. On December 13, 1898, Z. Moon, as next friend of his minor son Emmet Moon, brought suit in the city court of Atlanta against Dr. Floyd W. McRae, substantially alleging the following facts as a cause of action: On November 4, 1891, Emmet Moon bruised his right leg or shin-bone just below the knee on a wheelbarrow, and after about a week, considerable pain ensuing, the defendant, a practicing physician then and now of Fulton county, Georgia, was called in to treat the wound. When he examined the leg he was informed by petitioner and his wife and son of the manner in which Emmet was hurt, and was told that in their judgment the pain was the result of the blow in falling against the wheelbarrow, which petitioner alleges is the case. Defendant replied that this was not the cause,

but that Emmet was suffering from inflammatory rheumatism, and prescribed as a proper treatment therefor that the place should be rubbed with a liniment which he furnished, stating this was the treatment needed. The leg commenced to get worse, and defendant continued his visits at very short intervals. He was told by petitioner that the treatment was not doing any good, and that the leg was getting worse. Defendant was again informed that the trouble was not rheumatism, but that it was produced from the effect of the blow, but defendant declared that this was a mistake, and ordered his treatment for rheumatism to be continued. After about the 10th of November there were evidences of the formation of pus under the place where the wound had been received on the leg, and the attention of defendant was called to this from about the time of his second visit, but notwithstanding he continued his treatment for rheumatism, and Emmet's pain and suffering became so great that he had to be given opiates. Petitioner continued to tell defendant that he was sure pus had formed in the wound, and that it was present in large quantities. The defendant finally admitted he had made a mistake in diagnosis of the case, and at the urgent request of petitioner lanced the leg below the knee and above the foot, and pus to the amount of a quart or more, much of it in large clots, was taken out of the leg. Defendant then prescribed a wash for the wound, washing it himself, and after a few more visits he told petitioner that his wife could wash the wound as well as he, and that he would call again after a few days. The treatment prescribed by defendant was followed, but Emmet became much worse, not being able to sleep, and suffering intense pain. After several days defendant called to see Emmet, pronounced him worse, and ordered a continuance of his prescribed treatment. He then ceased his visits, and petitioner had to call in other physicians, who split the leg open from near the knee to near the foot, and it was found that the periosteum of the bone had been destroyed and that the bone of the leg had decayed. It was charged that this was the result of defendant allowing the pus to remain in the leg, and that as the result of unskilful treatment and wrongful diagnosis of the case by defendant, the leg had to be amputated. Petitioner further charges that Emmet

suffered great pain and anguish in consequence of his leg being unskilfully treated, which made amputation necessary; that his suffering had been severe and protracted, all to his damage in the sum of ten thousand dollars. In answer to this petition the defendant, in effect, denied all the allegations therein which attempted to charge him with liability on account of his alleged negligent, improper, or unskilful treatment of the patient. Quite a volume of evidence was introduced pro and con, and the jury, after the charge of the court, returned a verdict for the defendant. Plaintiff moved for a new trial on various grounds, and, in his bill of exceptions, assigns error on the judgment of the court overruling his motion.

In one ground of the motion error is assigned on the following charge of the court: "It is further contended, gentlemen of the jury, in the case, that although there was a mistake as to the first diagnosis of the disease by the defendant, and treatment kept up as for another disease, up to the time when the treatment was changed,—it is contended by the defendant that this did not result in the necessity for the amputation, but the amputation resulted from an entirely different disease, which would have been the result notwithstanding the original mistake that may have been made. Well, gentlemen of the jury, if that is true, if you believe that Dr. McRae made any mistake in his diagnosis, any mistake as to the treatment, but yet if you believe it did not cause the amputation, then the defendant would not be liable; the rule being, as already stated to you, in order to make the defendant liable, it must appear that he failed to exercise a reasonable degree of skill and care, and that such failure resulted in the injury; if the injury resulted from something else, but did not result from such failure, then the defendant would not be liable." One ground of objection to this charge is, that it is argumentative, and it eliminated the fact that the plaintiff could have recovered for all the results of the defendant's mistreatment, such as pain and suffering and the like, even though it may not have caused the amputation itself; that if the defendant's negligence caused the plaintiff's leg to become swollen and inflamed, and caused him pain and suffering, then there could have been a recovery, although the amputation itself resulted from some other disease. The

court's charge amounts to stating that if the amputation itself did not result from the defendant's treatment, there could be no recovery, short of the amputation.　We think the criticism made on the charge excepted to is entirely correct, and that the charge necessarily excluded from the jury the consideration of any damages growing out of pain and suffering, although the result of defendant's negligence in the treatment, provided this mistreatment did not result in the amputation of the limb.　We presume that this charge was based upon the idea that in his petition the plaintiff sought a recovery exclusively on account of the treatment resulting in an amputation of the leg. Counsel for defendant in error, in their brief and argument before us, do not absolutely and unequivocally claim that the declaration can not possibly be construed as declaring for pain and suffering, yet they do contend that it is exceeding doubtful whether it does, and that the record indicates the entire case was placed throughout on the amputation, loss of the leg, and that nowhere in the pleadings and evidence were pain and suffering mentioned, except as mere inducement.　While the petition is not as full and explicit on the point of pain and suffering as it perhaps should have been, yet there was no demurrer filed to it.　It expressly sets forth the extent of the patient's pain and suffering, much of which, from the charges in the declaration, was clearly attributable to an improper diagnosis of the case by the physician, and to his delay in administering the proper treatment until pus had so accumulated in the diseased leg as to unnecessarily add to his pain and suffering.　The damages claimed in the declaration were not only for the loss of the leg by amputation, but also for pain and suffering occasioned by the alleged mistreatment.　There was much uncontradicted evidence admitted upon this subject, showing to what extent the accumulated pus in the leg had caused injury and suffering, from which no relief whatever was experienced until it had been removed therefrom.　Some evidence was also introduced in behalf of the plaintiff, which does not seem to be denied by the defendant, that an earnest effort was made to persuade the latter to operate so as to remove pus from the leg, because of its swelling and pain, days before he acted upon the suggestion; and there is also testimony to the effect that, after operating

and finding such a quantity of pus discharged therefrom, he admitted making a great mistake in his diagnosis of the case, and that if he had operated on the leg sooner, he would have saved the patient much pain and suffering.

The evidence in this case is quite voluminous. It would serve no useful purpose to enter into minute detail of the volume of testimony that was introduced on each of the issues of fact on trial. We only make brief allusion to the above facts appearing in the testimony, with the view of showing that pain and suffering was evidently an important element in the damages claimed by the plaintiff, and that the testimony did not demand a finding by the jury that no part of such pain was caused by the unskilful or negligent treatment by the defendant. It was fair, therefore, to the plaintiff's cause that the court should have presented this theory to the jury for their consideration, that they might determine the issues of fact upon this particular branch of the case. For this reason we think the charge complained of requires the grant of a new trial.

There are various other grounds in the motion for a new trial complaining principally of certain charges of the court, some of which are alleged to be argumentative, and some to be error because they present only defendant's side of the case, and the theory of defendant was by certain charges repeated too often, and was presented more prominently than the contentions of the plaintiff. After carefully reading over all of these grounds and comparing them with the entire charge of the court, which is embodied in the record, we see nothing in them which would necessitate a new trial or justify a discussion. In so far as the requests to charge were pertinent, the principles therein embodied were covered by the general charge of the court. We think, in the main, the charge fully and fairly covered the case. We, of course, do not mean to intimate upon what side even apparently rests a preponderance of the evidence. In this connection we will only say that we have carefully read, at a consumption of much time and thought, this voluminous record of evidence, and we can not say that it necessarily demanded the verdict that was found. The charge above quoted and excepted to in the motion for a new trial is on such a material issue that, in view of the testimony, it re-

quires the grant of a new trial; and on this ground alone is the judgment of the lower court reversed.

*Judgment reversed.    All the Justices concurring, except Cobb, J., who was disqualified.*