## SADIE ZAGEIR v. SOUTHERN EXPRESS COMPANY.

(Filed 31 May, 1916.)

**1. Negligence—Automobiles—Licensed Chauffeurs — Unlawful Acts — Causal Connection.**

Where the owner of an automobile is driving her car upon the streets of a city in violation of an ordinance requiring a license, and the machine is injured by the backing of an express wagon onto the street in such negligent manner as to damage the car, without contributory negligence on the owner's part and which the care of a skillful chauffeur would not have avoided, it is *Held*, that the violation of the ordinance will not bar the plaintiff of recovery in her action for damages, there being no causal connection between the unlawful act and the damages sustained.

**2. Courts—Verdict—Recess of Court—Consent of Counsel—Findings of Court —Appeal and Error.**

The discretionary act of the trial judge in rendering judgment upon a verdict of the jury returned during recess of the court without the consent of counsel will not be reviewed on appeal when it appears from the

finding of the court that the jury had not discussed the case before delivering it to the clerk, though several had done so thereafter with appellee's attorney; that the verdict was agreed to before the jurors separated, no improper influence had induced it, and the issues were not recorded until after the verdict was returned to the judge.

CIVIL ACTION tried before *Harding, J.,* at Spring Term, 1916, of BUNCOMBE, upon these issues:

1. Was plaintiff's property injured by the negligence of the defendant, as alleged? Answer: "Yes."

2. Did the plaintiff, by her own negligence, contribute to the injury, as alleged? Answer: "No."

3. What damage is plaintiff entitled to recover? Answer: "$800, with interest."

From the judgment rendered, the defendant appealed.

*R. C. Goldstein, Mark W. Brown for plaintiff.*
*Bernard & Johnston for defendant.*

BROWN, J. This action is brought to recover damages for injury to plaintiff's automobile. The evidence tends to prove plaintiff was driving her automobile at a very moderate speed along Charlotte Street in Asheville. As she was passing the private alleyway leading from the street to the Manor Hotel a heavy express truck belonging to the defendant backed out of the alleyway into the street and struck the plaintiff's automobile and greatly injured it. There were two men on the forepart of the truck, but none on the rear. There is evidence tending to prove that the truckmen did not keep a lookout as the machine backed into the street and into plaintiff's auto, and it is a legitimate inference from the evidence that if they had, the collision could have been avoided. There was an obstruction next to sidewalk that prevented plaintiff from seeing the truck as it backed down the alleyway into the street.

The defendant offered evidence to the effect that the plaintiff had never been examined as to her qualifications, and had no license authorizing her to drive an automobile, and that she was at the time of the collision violating the ordinance of the city.

At the conclusion of the evidence defendant moved to nonsuit and requested the court to charge the jury:

"That it being admitted that the plaintiff was driving her automobile through the streets of the city of Asheville without having stood the examination or obtained the license required by the ordinances of said city, the plaintiff was at the time of the collision complained of engaged in an unlawful act, and is not entitled to recover any damages for any injury which she might have sustained while engaged in such unlawful act, and the jury should answer the first issue 'No.'"

In our opinion there is abundant evidence of negligence upon the part of defendant, and that upon all the evidence presented in this record plaintiff is entitled to recover for the damage done unless the above instruction should have been given. We think it was properly refused. It is true that the plaintiff at the time of the accident was negligent in not procuring a license from the city of Asheville to operate her automobile upon the streets of the city, but she is not placed outside all protection of the law nor does she forfeit all her civil rights merely because she violated such ordinance.

The plaintiff's violation of the law, in order to bar her recovery, must, like any other act, be a proximate cause in the same sense in which defendant's negligence must have been a proximate cause to give a right of action. A collateral unlawful act not contributing to the injury will not bar a recovery. See *Davis v. R. R.,* 170 N. C., 582.

The right of a person to maintain an action for a wrong committed on him is not taken away because at the time of the injury he was disobeying a statute, which act on his part in no way contributed to his injury. 1 Shearman and Red. Neg., sec. 94, sec. 104 (6 Ed.) ; *Hughes v. Atlanta Co.,* 136 Ga., 511; *Armistead v. Lounsberry,* 151 N. W., 542; *Sutton v. Wanwatosa,* 29 Wis., 21; *P. W. and B. R. R. Co. v. Towboat Co.,* U. S. 23 Howard 209, 16 L. Ed., 433; 547 Ann. Cases, 1912 C 394 and notes.

It is held by our Court that while the violation of a city ordinance relating to the running of automobiles on the streets is negligence *per se,* it is necessary, to recover damages alleged to have been caused thereby, that the plaintiff show that this negligence was the proximate cause of the injury complained of. *Ledbetter v. English,* 166 N. C., 125.

The principle is well settled, as stated by Judge Cooley, "that to deprive a party of redress because of his own illegal conduct the illegality must have contributed to the injury." 1 Cooley on Torts (3 Ed.), 269.

The same principle is stated by Watson: "At the outset it may be stated as a general rule that the mere fact that the plaintiff, at the time of the injuries received, is engaged in the commission of an unlawful act is not sufficient to relieve the author of the wrong or liability in damages therefor." Personal Injuries, 711.

The Supreme Court of Washington decided a case exactly like this, and said: "In other words, before the violation of the statute by the person injured will constitute a defense to the negligent act of the person injuring him, there must be shown some causal connection between the act involved in the violation of the statute and the act causing the injury. Here there was no causal connection. The injury would have happened in the same manner it did happen had the respondent theretofore paid the license fee due the State and been in possession of the statutory license." *Switzer v. Sherwood,* 80 Wash., 19.

It is manifest from the evidence that the injury to the automobile would have occurred had the plaintiff's machine been driven by the most experienced chauffeur.

The case of *Lloyd v. R. R.,* 151 N. C., 536, is not in point. Lloyd's wrong was the proximate and sole cause of his own injury. He willfully violated a criminal statute by working twenty-three hours consecutively, and that was his only ground for recovery. He became fatigued, weakened, and exhausted, both in body and mind, having worked continuously for a long period of time without sleep and nourishment, and could not, therefore, properly exert himself for his own safety and protection. The injury would never have happened if he had obeyed the statute. It was his very violation of the statute that was the proximate cause of his injury, and in this respect *Lloyd's case* differs entirely from this plaintiff's case.

The Massachusetts cases relied on by the defendant are not authoritative. Those cases, like some in Maine and Vermont, were based on a statute prohibiting the general travel on a highway on Sunday. It was formerly held in those States that an ordinary Sunday traveler could not recover for injuries suffered from obstacles in the road or other negligence, though he could recover for wanton or willful injuries. Those statutes have now been repealed and the decisions based upon them are obsolete. In commenting upon these cases, Shearman and Redfield say that this application of the Sunday law has been repudiated by all the other courts which have passed upon it. Neg., sec. 104.

The defendant moved for a new trial upon the ground that the verdict was returned and received by the clerk during the recess, without its consent. The following are the facts found by the court:

"Immediately after the presiding judge had charged the jury, the jury retired to the jury room for the purpose of acting upon the evidence and awarding a verdict; immediately after the jury retired the court took a recess until 3 o'clock. Neither the plaintiff nor the defendant, in open court, consented that the clerk might take the verdict in the absence of the judge. After the court had adjourned for the noon recess, counsel for the plaintiff, in the absence of the judge and in the absence of defendant's counsel, stated to the clerk that he would consent for the clerk to take the verdict in the event that the jury should reach a verdict before 3 o'clock. The defendant did not enter into such an agreement. Upon convening of court at 3 o'clock, the deputy clerk stated to the court that during the noon recess the jury had come in and returned a verdict in the absence of the parties or their attorneys, and that he had taken the verdict, and that the issues had been delivered to him in writing; that he had discharged the jury and that the jury had separated. The court immediately called the jury into the box, after having to send out

of the courtroom for two of them, and when all were present the presiding judge read the issues to the jury and asked if the issues read stated their findings, and they replied that they did. Whereupon, each juror was asked the question if he had discussed this case with any person after the judge had charged the jury, and prior to the convening of court, and nine of them stated that they had not and three of them stated that they had talked about the case after they had delivered the issues to the clerk and had been discharged; two of them stated that they had talked about the case to plaintiff's counsel, in the presence of the deputy clerk, but none of them had discussed it with any person before delivering the issues to the clerk or before they were discharged. The verdict upon which judgment was rendered was agreed to by the jury before the jury separated and no improper influence induced the verdict. The issues were not recorded until after the verdict was returned to the judge."

Under the authorities we see no reason to review the exercise of discretion upon the part of his Honor in refusing to set aside the verdict in this case, inasmuch as he has found that no improper influence induced it. *King v. Blackwell,* 96 N. C., 322; *Luttrell v. Martin,* 112 N. C., 594; *Petty v. Rousseau,* 94 N. C., 362; *Tillett v. R. R.,* 166 N. C., 520. In that case *Mr. Justice Allen* says: "The custom, which is very general, of allowing juries to return their verdicts to the clerk in the absence of the judge, is not approved, as it frequently results in misunderstanding and in an attempt to impeach the verdict; but in this case the findings of the judge show that the verdict .upon which the judgment is rendered was agreed to before the jury separated, and there is nothing to indicate that any improper influence induced the verdict, and the action of his Honor in refusing to set it aside is sustained."

No error.