M. E. THORNBURG v. H. F. LONG.

(Filed 3 December, 1919.)

1. **Physicians and Surgeons—Diagnosis—Treatment—Negligence—Liability —Damages—Error of Judgment—Reasonable Doubt.**

   A physician or surgeon only impliedly contracts to have the reasonable knowledge and capability and to use the known and reasonable means in the diagnosis and treatment of his patient, but does not guarantee a cure, and when so qualified, he is not liable in damages for an honest error in judgment in his diagnosis and treatment, committed within the stated rule.

2. **Same—Diagnosis.**

   In an action against a consulting physician to recover damages for pain and suffering of his client, evidence that a diagnosis and treatment for a different cause gave the relief sought, is sufficient upon which the jury could find that the defendant's diagnosis was the wrong one, but the evidence in this case is held insufficient for a recovery of damages on that ground, his diagnosis and treatment being according to a recognized and established practice.

3. **Physicians and Surgeons—Diagnosis—Privilege—Communications.**

   The communication of a wrong diagnosis of a patient's disease to his regular attending physician, by a consulting physician at whose instance he had acted, is wholly privileged, and not actionable in itself.

THORNBURG v. LONG.

CIVIL ACTION, tried before *Long, J.,* at July Term, 1919, of CATAWBA. From a judgment of nonsuit plaintiff appeals.

*Council & Yount and W. A. Self for plaintiff.*
*E. B. Cline, Z. V. Long, and W. D. Turner for defendant.*

BROWN, J. The testimony of plaintiff tends to prove that in January, 1918, the plaintiff began suffering from a swollen arm, and, after being treated for about a week by his local physician and receiving no relief, he was sent by his family physician to the hospital of the defendant at Statesville for treatment. Plaintiff told defendant the purpose of his visit, and of his great suffering, and asked defendant to operate on him or give him some relief from his pain.

The defendant examined plaintiff at once, removed his shirt to the waist, found his arm swollen from elbow to neck, examined his back, looked over him, asked him as to his habits, private history relating to women, took blood from him for analysis, put him to bed, called on him next morning to make further examination, gave him some medicine, and told him he could not do anything until he had a report from the analysis of his blood—would not say it was tuberculosis. The plaintiff said the defendant did not know what was the matter with him. The defendant took some blood from plaintiff's arm and sent it to Charlotte to be tested, and the next day the plaintiff returned to his home to await the further orders of the defendant. In a few days the defendant wrote to Dr. Shipp, plaintiff's local physician, that the blood of plaintiff had been subjected to the strongest positive Wassermann test, and that he had a bad case of syphilis, and nothing but heroic treatment would save his life.

The plaintiff testified that he was a virtuous man, and has never had sexual intercourse with any woman other than his wife, who was a woman above reproach.

After plaintiff returned from defendant's hospital, his local physician lanced his arm, and a few days thereafter it was again lanced by Dr. Crowell, of Lincolnton, and the plaintiff has entirely recovered.

The plaintiff alleged that the defendant was negligent in that he failed to properly diagnose and treat his case, and that in consequence thereof he suffered great physical and mental pain for a considerable longer time than he would otherwise have suffered but for the failure of the defendant to properly diagnose his case and to administer the proper remedies.

The law governing the liability of a physician to his patient is well settled. While there is an implied contract that the physician or surgeon who undertakes to treat a patient will use all known and reasonable

means to accomplish the object for which he is called to treat the patient; and that he will attend to the patient carefully and diligently; there is no guaranty that he will cure him or that he will not commit an error of judgment. The law implies only that he not only possesses, but that he will employ in the treatment of the case, such reasonable skill, care, and diligence as are ordinarily exercised in this profession. But a physician or surgeon possessing the requisite qualifications, and applying his skill and judgment with ordinary care and diligence to the diagnosis and treatment of a patient, is not liable for an honest mistake or error of judgment in making a diagnosis or prescribing the mode of treatment, where there is ground for reasonable doubt as to the practice to be pursued. Am. and Eng. Ency. of Law, vol. 22, p. 804 "K"; *Long v. Austin,* 153 N. C., 508, also p. 513; *Mullinax v. Hord,* 174 N. C., 607; *McCracken v. Smathers,* 122 N. C., 800.

The question then is, Did the defendant, under the facts as testified to by plaintiff, use that skill and diligence which he was required to use, and is there evidence tending to prove plaintiff's contention sufficient to be submitted to the jury?

There is evidence sufficient to go to the jury that the defendant made an erroneous diagnosis when he concluded that plaintiff suffered from the effects of syphilis, but there is not a scintilla of evidence that he is incompetent or was negligent. On the contrary, evidence offered on behalf of defendant indicates that he stands very high in his profession, and that in diagnosing plaintiff's case he followed recognized and established practice. The fact that defendant wrote to Dr. Shipp that the examination showed evidence of syphilitic poison is no basis for an action. Dr. Shipp was plaintiff's local physician, and the defendant's duty was to communicate to him the conclusion he had reached. The communication was wholly privileged. *Briggs v. Boyd,* 34 N. C., 377; *Nissen v. Cramer,* 104 N. C., 574.

We think the motion to nonsuit was properly allowed.

Affirmed.