MARY WHITE NASH v. HUBERT A. ROYSTER.

(Filed 8 April, 1925.)

1. **Evidence—Nonsuit—Statutes—Waiver.**

    Upon a motion as of nonsuit, the evidence is to be considered in the light most favorable to the plaintiff, whether offered by her or elicited on cross-examination, entitling her to the benefit of every reasonable intendment and inference to be drawn therefrom in her favor; and, under our statutes, where the defendant's motion is refused after the introduction of the plaintiff's evidence, by introducing evidence defendant waives the benefit of his exception, and the entire evidence will be considered under the rule stated.

2. **Physicians and Surgeons — Principal and Agent — Substitutes—Contracts—Liability.**

    Where a surgeon has performed an operation upon his patient and left her under the care of another surgeon or physician for further treatment,

NASH *v.* ROYSTER.

the former may be liable for the malpractice of the latter, proximately resulting in injury to the patient, in the absence of a special contract with the patient, or those having her in charge, that he would not be responsible therefor; and evidence of the practice in such instance is competent upon the trial.

**3. Same—Questions for Jury—Trials.**

A surgeon may contract only to surgically operate upon the patient and not be responsible for the treatment of another in taking charge after the operation; and where the operation has been properly performed, and injury results from the malpractice of the one taking charge of the patient thereafter, and the evidence is conflicting as to whether the latter was acting as agent for the former, or independently employed by the parents or others having charge of the patient, an issue of fact is raised for the determination of the jury.

**4. Same—Damages.**

A physician or surgeon who sends a substitute practitioner to treat a case, on becoming unable personally to fill a professional engagement, is not liable for the latter's negligence or malpractice, unless the substitute acts as his agent in performing the service, or due care is not exercised in selecting the substitute practitioner.

**5. Same—Duration of Employment.**

Where a surgeon takes charge of a case and is employed to attend the patient, in the absence of a special contract to the contrary, the relation of physician and patient will be presumed in law to continue until ended by the mutual consent of the parties, or revoked by dismissal of the physician, or until his services are no longer needed.

**6. Physicians and Surgeons—Measure of Responsibility for Damages to Patient.**

A surgeon or physician, in accepting a patient for treatment, implies that he has the knowledge therein of the average practitioner, and that he will diligently apply this knowledge to the proper treatment of the particular case, without neglect or omission of duty, until the term of his employment be terminated, nor is he responsible for an error in professional judgment when the opinions of those in like profession reasonably differ.

APPEAL by defendant from *Horton, J.,* at second November Term, 1924, of WAKE.

Civil action for damages, tried upon issues raised by the pleadings, on allegations and denials that plaintiff suffered great injury by reason of defendant's negligence in failing properly to care for her after an operation affecting her left knee, which, she alleges, resulted in purulent arthritis, described as "a very fatal disease."

From a verdict and judgment in favor of the plaintiff the defendant appeals, assigning errors.

*W. H. Yarborough, Ben T. Holding, and J. W. Bailey for plaintiff.
Albert L. Cox, R. N. Simms, R. B. White, E. H. Malone, and A. L.
Purrington, Jr., for defendant.*

STACY, C. J. The exception addressed to the refusal of the court to
grant the defendant's motion for judgment as of nonsuit, made first at
the close of the plaintiff's evidence, and renewed at the close of all the
evidence, needs no particular elaboration. The first exception has been
waived, under the express provisions of the statute. C. S., 567. The
defendant had the right to rely on the weakness of the plaintiff's evi-
dence when she rested her case; but, having elected to offer testimony
in his own behalf, he did so *cum onere,* and only the exception noted at
the close of all the evidence may now be urged or considered. *Harper v.
Supply Co.,* 184 N. C., 204.

It is the settled rule of practice and the accepted position in this
jurisdiction that, on a motion to nonsuit, the evidence which makes for
the plaintiff's claim and which tends to support her cause of action,
whether offered by the plaintiff or elicited from the defendant's witnesses,
will be taken and considered in its most favorable light for the plaintiff,
and she is "entitled to the benefit of every reasonable intendment upon the
evidence, and every reasonable inference to be drawn therefrom."
*Christman v. Hilliard,* 167 N. C., p. 6; *Oil Co. v. Hunt,* 187 N. C.,
p. 159; *Davis v. Long, ante,* p. 131.

In the present case the evidence is conflicting on the main issue, as
to whether plaintiff received proper care and attention from defendant,
under the circumstances. This makes it a question for the jury. *Log-
gins v. Utilities Co.,* 181 N. C., 221. We deem it unnecessary to set out
the testimony of the several witnesses in detail. It is somewhat vol-
uminous, and, to state it fairly, would require a recital of practically all
of it. Hence a statement of only such portions as are pertinent and
decisive of the legal questions involved will be undertaken.

There was evidence to the effect that on 12 August, 1921, the plaintiff,
a girl about 15 years of age, was brought by her parents, at the sugges-
tion of their family physician, from Franklin County, N. C., where
they live, to Rex Hospital, in the city of Raleigh, and placed under the
care of Dr. H. A. Royster for treatment. She was suffering, at the
time, from inflammation and swelling above her left knee. The swell-
ing continued to increase until pus manifested itself in a "head," from
2 to 2½ inches above the knee joint; and on 21 August the defendant
made an incision on the inside of plaintiff's thigh, removed the pus, and
put in a small drain. That night the defendant left Raleigh for Roch-
ester, Minnesota, to attend one of the Mayo clinics, and was gone for
about two weeks. In the meantime plaintiff's condition grew worse, the

knee joint became affected, and on 29 August a second operation was performed by Drs. Wilkerson and Thompson, the latter being called in for consultation by the former, though plaintiff's father testified that he employed Dr. Thompson independently of any other arrangement. This operation was for purulent arthritis, described as "a very fatal disease." In answer to a question as to whether plaintiff's condition was rendered worse by the delay in performing the second operation, Dr. Thompson said: "I think, of course, it would have been better earlier, but you could not do it until you knew that it had to be done." He further stated that he thought the proper course of treatment had been pursued by Dr. Royster.

The plaintiff left Rex Hospital on 19 September, 1921, and was carried to a hospital in Rock Hill, S. C., where she could be treated by her uncle, Dr. Lyle. She is lame and now has a stiff knee joint, due to the infection which had lodged there, and she also has what is termed by the medical profession a weight-bearing leg.

There was evidence from the defendant tending to show that after the operation on 21 August, he had a talk with plaintiff's parents, Mr. and Mrs. Nash, in the presence of Drs. Wilkerson and Lawrence, in which he informed them of his intention to leave town. The defendant told them that the plaintiff had responded well to the operation; that there was no immediate cause for alarm, and that Dr. Wilkerson, a skillful and competent surgeon, would look after the patient while he was away. No objection was interposed to this arrangement. Dr. Wilkerson and Dr. Lawrence corroborated these statements in their testimony, but they were denied by the plaintiff's evidence.

It was further in evidence that the results obtained by plaintiff from the treatment received were as good as could be expected. Hence it was contended on behalf of the defendant that no damage had been proved, and that no act of his had been shown to have proximately resulted in injury to the plaintiff.

Damages were awarded by the jury on the theory that the defendant had negligently left the case, which resulted in injury to the plaintiff, or that Dr. Wilkerson negligently delayed the second operation, thereby producing harmful results, for which the defendant was held responsible under the following portion of his Honor's charge:

"If the jury find from the greater weight of the evidence that, upon leaving, after the first operation on Miss Nash, for a two-weeks absence, Dr. Royster, without consent of plaintiff or her parents, put Dr. Wilkerson in charge of her, this would constitute Dr. Wilkerson as Dr. Royster's agent; and if the jury should find from the greater weight of the evidence that Dr. Wilkerson failed to give Miss Nash in her condition such reasonable skill, care and diligence as are ordinarily exercised

by members of his profession in similar cases, such failure on Dr. Wilkerson's part would be imputed to Dr. Royster under the law of principal and agent, and a principal being liable for defaults and failures of his agent, acting within the scope of his authority."

As to whether Dr. Wilkerson was the agent of Dr. Royster, in looking after the plaintiff's case, during the defendant's absence, was a question of fact to be determined by the jury; and we think the court erred in holding, as a matter of law, that the relation of principal and agent necessarily followed from what took place, unless the arrangement had been consented to by the plaintiff or her parents. Neither the consent of the plaintiff nor her parents, nor the lack of such, is perforce the determining factor as to whether the relation of principal and agent existed between the defendant and Dr. Wilkerson. Agency could exist with the plaintiff's knowledge and consent as well as without it. This is not the test. Whether an agency in fact has been created is to be determined by the relations actually existing between the parties under their agreements or acts. 21 R. C. L., 819; 31 Cyc., 1215. The evidence is not very direct on this point. Apparently the question was not mooted on the trial until the judge referred to it in his charge. In this respect we think the evidence of Dr. Anderson touching the subject of custom among local physicians, excluded on the hearing, was competent as bearing on the question of agency, or the relation existing between Drs. Royster and Wilkerson, so far as it had to do with their treatment of the plaintiff's case.

By the clear weight of authority, a physician or surgeon who sends a substitute practitioner to treat a case, on becoming unable personally to fill a professional engagement, is not liable for the latter's negligence or malpractice, unless the substitute acts as his agent in performing the service, or due care is not exercised in selecting the substitute practitioner. *Moore v. Lee,* 109 Tex., 391; *Gross v. Robinson,* 203 Mo. App., 118; *Mullins v. DuVall,* 25 Ga. App., 690; *Stokes v. Long,* 159 Pac. (Mont.), 28; *Gillette v. Tucker,* 67 Ohio St., 106; 65 N. E., 865; *Keller v. Lewis,* 65 Ark., 578; *Hitchcock v. Burgett,* 38 Mich., 501; *Myers v. Halborn,* 58 N. J. L., 193; 21 R. C. L., 395.

It has been held that a physician or surgeon is responsible for the negligence or carelessness, which proximately results in injury to another, of his apprentice (*Hancke v. Hooper,* 7 Car. & P. (Eng.), 81), of his agent (*Landon v. Humphrey,* 9 Conn., 209), of his assistant (*Trist v. Welker,* 7 Ohio N. P., 472), of his partner (*Hyrne v. Erwin,* 26 S. C., 226), of an associate under certain conditions (*Stokes v. Long, supra*), or of any one in his employ while acting in the scope of such employment. And there may be a distinction, depending on the character of the engagement, between sending a substitute practitioner to take

full charge of a case, and sending him only for the purpose of looking after the patient during the absence of the sender. See *Moore v. Lee, supra,* as reported in 4 A. L. R., 185, and annotation.

The duty which a physician or surgeon owes to his patient must be measured and determined primarily and in the first instance by the contract of employment. A physician or surgeon may agree to perform an operation without undertaking or rendering himself responsible for the subsequent treatment of the case. He thus contracts against liability beyond the exercise of reasonable care, diligence and skill in the performance of the operation and for such services as are contemplated by both parties to the special or limited contract. A physician or surgeon is not bound to render professional services to every one who applies, and he may, therefore, by notice or special agreement, limit the extent and scope of his employment. Such is the simple law of contract. *Clancy v. Overman,* 18 N. C., 402; *Gillette v. Tucker, supra.*

But when a physician or surgeon takes charge of a case and is employed to attend a patient, unless the terms of employment otherwise limit the service, or notice be given that he will not undertake, or cannot afford, the subsequent treatment, his employment, as well as the relation of physician and patient, continues until ended by the mutual consent of the parties, or revoked by the dismissal of the physician or surgeon, or until his services are no longer needed. And he must exercise, at his peril, reasonable care and judgment in determining when his attendance may properly and safely be discontinued. *Ballou v. Prescott,* 64 Me., 305; *Mucci v. Houghton,* 89 Iowa, 608; *Dashiell v. Griffith,* 84 Md., 363.

As a general rule, in the absence of any special agreement limiting the service, or reasonable notice to the patient, when a surgeon is employed to perform an operation, he must not only use reasonable and ordinary care, skill and diligence in its performance, but, in the subsequent treatment of the case, he must also give, or see that the patient is given, such attention as the necessity of the case demands. *Gillette v. Tucker, supra.* Even in the time of Blackstone it was held for law "that every one who undertakes any office, employment, trust, or duty, contracts with those who employ or entrust him to perform it with integrity, diligence, and skill. And if by his want of either of those qualities any injury accrues to individuals, they have therefore their remedy in damages by a special action on the case." 3 Bl. Com., 165. And such is the substantive law today.

Ordinarily, when a physician or surgeon undertakes to treat a patient without any special arrangement or agreement, his engagement implies three things: (1) that he possesses the requisite degree of learning, skill and ability necessary to the practice of his profession, and which

others similarly situated ordinarily possess; (2) that he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to the patient's case; and (3) that he will exert his best judgment in the treatment and care of the case entrusted to him. *Thornburg v. Long,* 178 N. C., 589; *Brewer v. Ring,* 177 N. C., 476; *Mullinax v. Hord,* 174 N. C., 607; *Long v. Austin,* 153 N. C., 512; *McCracken v. Smathers,* 122 N. C., 799; *Whitsett v. Hill* 37 L. R. A. (Iowa), 830; 21 R. C. L., 381; Note: 93 Am. St. Rep., 657. The law, therefore, holds him answerable for any injury to his patient proximately resulting from a want of that degree of knowledge and skill ordinarily possessed by others of his profession, or for the omission to use reasonable care and diligence in the practice of his art, or for the failure to exercise his best judgment in the treatment of the case. *Mullinax v. Hord, supra; Long v. Austin, supra; Pike v. Housinger,* 155 N. Y., 201; *Moon v. McRae,* 111 Ga., 206. And in an action against a physician or surgeon for malpractice, where no question is raised as to his possession of the requisite degree of learning, skill and ability, his liability may yet be made to depend upon whether he failed to use ordinary care and diligence, or neglected to exercise his best judgment in the treatment of the case. *Cayford v. Wilbur,* 86 Me., 414. It can make no difference whether injury proximately results from a want of skill or from a want of its application, the physician or surgeon is, in either case, equally responsible. *Mullinax v. Hord, supra; Ritchey v. West,* 23 Ill., 385; *Long v. Morrison,* 14 Ind., 595.

But the law does not require of a physician or surgeon absolute accuracy, either in his practice or in his judgment. It does not hold him to a standard of infallibility, nor does it require of him that utmost degree of skill and learning known only to a few in the profession. *Mullinax v. Hord, supra; Long v. Austin, supra; Van Skike v. Potter,* 53 Neb., 28. He is not answerable for mere errors of judgment, where good judgments may differ. *Pepke v. Grace Hospital,* 90 N. W. (Mich.), 278. But he is supposed to exercise an enlightened judgment, and it must be founded on his intelligence. He engages to bring to his patient's case a fair, reasonable and competent degree of skill, and to apply it with ordinary care and diligence in the exercise of his best judgment. *Jackson v. Burnham,* 39 Pac. (Col.), 579; *West v. Martin,* 31 Mo., 375; 80 Am. Dec., 107. Liability may attach for errors of judgment, however, where they are so gross as to be inconsistent with that degree of skill and competence which it is the duty of every physician or surgeon to employ in the treatment of a case. *Johnson v. Winston,* 94 N. W. (Neb.), 607. Thus it has been held that where a physician or surgeon waits too long before undertaking a necessary operation,

when ordinary prudence would have prompted earlier action, and injury results therefrom, such conduct is properly imputable to his negligence, rendering him liable for the resultant damage, as he must have known, in the exercise of a reasonable judgment, the probable consequences of such delay. *DuBois v. Decker,* 130 N. Y., 325.

The following very satisfactory statement of what we conceive the law to be is taken from the opinion of *Vann, J.,* in the case of *Pike v. Honsinger,* 155 N. Y., 201:

"Upon consenting to treat a patient, it becomes his duty (the duty of a physician or surgeon) to use reasonable care and diligence in the exercise of his skill and the application of his learning to accomplish the purpose for which he was employed. He is under the further obligation to use his best judgment in exercising his skill and applying his knowledge. The law holds him liable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to exercise reasonable care, or the failure to use his best judgment. The rule in relation to learning and skill does not require the surgeon to possess that extraordinary learning and skill which belong only to a few men of rare endowments, but such as is possessed by the average member of the medical profession in good standing. Still he is bound to keep abreast of the times, and a departure from approved methods in general use, if it injures the patient, will render him liable, however good his intentions may have been. The rule of reasonable care and diligence does not require the exercise of the highest possible degree of care, and to render a physician and surgeon liable it is not enough that there has been a less degree of care than some other medical man might have shown, or less than even he himself might have bestowed, but there must be a want of ordinary and reasonable care, leading to a bad result. This includes not only the diagnosis and treatment, but also the giving of proper instructions to his patient in relation to conduct, exercise and the use of an injured limb. The rule requiring him to use his best judgment does not hold him liable for a mere error of judgment, provided he does what he thinks is best after careful examination. His implied engagement with his patient does not guarantee a good result, but he promises by implication to use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment in the effort to bring about a good result."

Tested by the foregoing rules and standards, we think the following instruction must also be held for error on the present record:

"The court charges you that upon the employment of a physician or surgeon for treatment of a patient, there is an implied contract that the physician will use all known and reasonable means to accomplish

the object for which he is called to treat the patient, and that he will attend the patient carefully and diligently; that there is no guaranty that he will cure the patient or that he will not commit an error of judgment."

A physician or surgeon is not required to use "all known and reasonable means" to accomplish the object for which he is employed, unless by specific contract he obligates himself to do so. *Mullinax v. Hord, supra; Sims v. Parker,* 41 Ill. App., 284; *Howard v. Groves,* 28 Me., 97; *Getchell v. Hill,* 21 Minn., 464; *Langford v. Jones,* 18 Or., 307. Of course, "as a man consents to bind himself, so shall he be bound." Elliott on Contracts (Vol. 3), sec. 1891. But there is no evidence on the present record of any special contract obligating the defendant to use "all known and reasonable means" in treating the plaintiff's case. And such is not implied by law under a general contract of employment. Note: 37 L. R. A., 830.

Mr. Thompson, in his valuable work on Negligence, Vol. 5, sec. 6711, speaking to this question, says: "The possession of the highest degree of learning and skill is not demanded. A physician or surgeon is not required to possess that extraordinary learning and skill which belong only to a few men of rare endowments, but rather the learning and skill possessed by the average member of the medical profession in good standing; and this is to be determined by the state of the profession at the time," citing a number of authorities in support of the text.

Every person who enters upon the practice of a learned profession undertakes to bring to that profession the exercise of a reasonable degree of care and skill. He does not, however, if he be a physician or surgeon, guarantee to effect a cure or warrant a recovery, or promise to use the highest possible degree of skill or all known means to accomplish such result. There may be others of higher education and greater advantages than he has had. But he does undertake to bring to his employment a fair, reasonable and competent degree of skill; and, in an action against him for malpractice, where the method or manner of his treatment has proximately resulted in injury to another, the question for the jury to determine is whether he possesses the requisite skill, or, possessing it, negligently failed to apply it to the case.

There are other exceptions appearing on the record, worthy of consideration, but as they are not likely to arise on another hearing, we shall not consider them now.

For errors in the charge, as indicated, there must be a new trial, and it is so ordered.

New trial.