HERBERT WESLEY COVINGTON, BY HIS NEXT FRIEND, HERBERT COVINGTON v. DR. WORTHAM WYATT.

(Filed 12 December, 1928.)

**1. Physicians and Surgeons—Liability for Injuries to Patients.**

The statute requiring a physician or midwife attendant upon childbirth to instill into the eyes of the newborn baby drops of a one per cent solution of silver nitrate does not impose upon the physician attempting in good faith to obey the statute the absolute duty of ascertaining the percentage of the solution furnished by a hospital for this purpose, and he is not liable for damages resulting from the use of a larger per cent of such solution when so furnished by the hospital. C. S., 7182.

**2. Same—Negligence.**

Where a nurse furnished by a hospital takes a bottle of silver nitrate from the medicine chest of the hospital, the label on which is illegible as to the strength of the solution, and instills drops of this solution into the eyes of a newborn baby while attempting to comply with the statute requiring that a one per cent solution of silver nitrate be used for this purpose, the physician in charge is not liable in damages for the injury resulting from the fact that the solution used was stronger than the one prescribed by the State Board of Health, since the statute does not impose upon him the duty of analyzing the solution furnished by the hospital, and his neglect to analyze the solution is not negligence.

APPEAL by plaintiff from a judgment of nonsuit rendered by *Lyon, J.,* at September Term, 1928, of FORSYTH. Affirmed.

The complaint states two causes of action. In the first the material allegations are that the plaintiff was born at the Baptist Hospital in the city of Winston-Salem on 18 August, 1927; that the defendant had previously been employed to attend the delivery and to give the plaintiff such care and treatment as the law requires and such as were necessary or advisable; that the defendant took charge and control of the case and assumed responsibility for performing the usual and ordinary duties within the scope of his employment; that he was required by law to instill or have instilled in the eyes of the plaintiff immediately upon his birth, two drops of a one per cent solution of silver nitrate prescribed or furnished by the State Board of Health; that he instilled a solution of more than one per cent of silver nitrate, namely thirty per cent, which the Baptist Hospital furnished; that the use of the solution administered was calculated to cause injury, and that it did cause injury to the plaintiff's eyes by burning them, causing them to swell, discoloring one eye, and impairing the plaintiff's sight.

The second cause of action has the following additional allegations: That the State Board of Health would have given to the defendant a one per cent solution of silver nitrate and that the defendant was negligent in failing to instill or have instilled into the plaintiff's eyes the solution prescribed by the State Board; that he was negligent in using a solution taken from a bottle the contents of which were unknown to him; and that the plaintiff's eyes were injured as a result of the defendant's negligence.

The defendant filed an answer denying all the material allegations of the complaint.

At the trial the plaintiff offered and thereby adopted as his evidence the following parts of paragraphs 8 and 9 of the defendant's answer: "That the mother of said child had entered the Baptist Hospital at Winston-Salem, N. C., as a patient in its maternity ward, said hospital being equipped and holding itself out as equipped to properly take care

of such patients and to supply competent nurses, the required medicines and other services; that there was in attendance upon the mother of said child, to render such assistance to the defendant as might be reasonably and properly required, a competent and experienced nurse, an employee of said hospital, and after the delivery of the said child and upon the request of the defendant to procure the proper solution, said nurse went to a cabinet where only appliances and medicines for use in obstetrical cases were kept, including proper solution of silver nitrate, and said nurse, in a medicine dropper, secured from a bottle found in said cabinet and labeled "silver nitrate" a sufficient quantity thereof and brought the medicine dropper with the solution in it to the place where said child was, and while the defendant held open the eyelids of said child, the nurse placed therein the solution which she had obtained as aforesaid. He admits that the solution procured by said nurse and used by her was more than one per cent. . . . He admits that the solution used by the nurse aforesaid was approximately thirty per cent and that it was too strong for such use in the eyes of a newborn infant."

Testimony was offered by each party and at the conclusion of all the evidence the action was dismissed as in case of nonsuit. The plaintiff excepted to the judgment and appealed upon error assigned.

*Ratcliff, Hudson & Ferrell for plaintiff.*
*Manly, Hendren & Womble for defendant.*

ADAMS, J. The ground of the relief sought by the plaintiff is the defendant's disregard of certain statutes, alleged to be mandatory, contained in chapter 118, Art. 14, of Consolidated Statutes. This article, entitled "Inflammation of Eyes of Newborn," is a transcript of the Public Laws 1917, ch. 257. Such "inflammation" is defined in C. S., 7180; and in section 7181 it is provided that any person attendant on or in any way assisting an infant or the mother of an infant at childbirth, or at any time within two weeks after childbirth, knowing the condition, shall make report thereof to the local health officer. Section 7182 declares it unlawful for any physician or midwife practicing midwifery to neglect or otherwise fail to instill or have instilled into the eyes of a newborn babe, immediately upon its birth, two drops of a solution prescribed or furnished by the State Board of Health. The solution prescribed contains one per cent of silver nitrate. The duties of the local health officer and of the State Board of Health are set forth in sections 7183 and 7184. Section 7185, deals with the treatment of patients in hospitals and institutions: "It shall be the duty of physicians, midwives, or other persons in attendance upon a case of child-

24—196

birth in a maternity home, hospital, public or charitable institution, in every infant's eyes, within two hours after birth, to use the prophylactic against inflammation of the eyes of the newborn specified in this article, and to make record of the prophylactic used. It shall be the duty of such institution to maintain such records in cases of inflammation of the eyes of the newborn as the State Board of Health shall direct." The next section is 7186 : "Whoever, being a physician, surgeon, midwife, obstetrician, nurse, manager, or person in charge of a maternity home or hospital, parent, relative, or person attendant upon or assisting at the birth of any infant, violates any of the provisions of this article shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined in a sum not less than ten dollars nor more than fifty dollars, and, if possessed of the required amount of property, subject to suit by the parent or guardian of the child for damages resulting to the child; and if such a suit shall be brought the establishment of the fact that the physician or midwife did not place the drops in the child's eyes within two hours of its birth shall be accepted as prima facie evidence of the physician's or midwife's responsibility for the injury of the disease to the eye or eyes of the child. It shall be the duty of the prosecuting attorney to prosecute all violations of this article."

It is the plaintiff's contention that in their application to the evidence these statutes impose liability upon the defendant without regard to the question of his negligence—that is, that the defendant's duty was absolute; and as a counter argument the defendant urges the interpretation that his duty was not absolute but relative, and that neither the letter nor the spirit of the statutes authorizes a civil action for damages resulting from an effort to obey the law. The several provisions relied on by the respective parties may be considered in the light of these contentions.

The statutes contemplate diverse contingencies. As we construe them, some of the provisions impose duties in cases of childbirth in the maternity ward of a hospital; others impose duties when the birth occurs elsewhere. It would seem that the latter class of cases is within the purview of section 7182. It was developed by the testimony of the plaintiff's witnesses that the purpose of instilling the solution is to provide against the possibility of venereal infection in the parent or to destroy germs which, due to such infection, may get into the eyes of the child. The primary object is the prevention of blindness and disease of the eyes. If the physician neglects or otherwise fails to instill or to have instilled the proper solution into the eyes of the child immediately upon its birth, and blindness or a diseased condition of the eyes by reason of such neglect or failure results from the cause which the in-

stillation was intended to prevent he may be liable in damages. The duty of trying to comply with the statutes may be absolute; but this is not equivalent to saying that the statute imposes upon a physician the absolute and unqualified duty of seeing that the solution contains exactly one per cent of silver nitrate. In practical effect the duty, if held to be absolute in this sense, would require of the physician the necessity in every case of preparing his own solution or of analyzing that which should be procured from the most competent and reputable sources. This, evidently, is not the object of the law.

The unlawful act denounced in section 7182, is the delinquency of the physician or midwife; but in section 7185, a duty is prescribed, not only for them, but for other persons in attendance upon childbirth in a maternity home or hospital. By section 7186 any physician, . . . nurse, . . . or other person attendant upon or assisting at the birth of an infant who violates the provisions of Article 14 shall be deemed guilty of a misdemeanor and may be subject to a suit for damages. In the last two sections the prescribed duty is required indiscriminately of the physician, the nurse, and others. But the duty is no more absolute here than under section 7182, the word "absolute" signifying certainty in administering the precise solution prescribed by the State Board of Health. If the prescribed duty is not absolute in its terms liability in damages will not necessarily be inferred from failure to instill the prescribed solution where an effort is made in good faith to comply with the statutes. For these reasons the judgment dismissing the first cause of action is affirmed.

The second cause is based upon the doctrine of negligence or malpractice. The allegations are that the plaintiff's injury was caused by the defendant's negligent failure to use the prescribed solution and by his substitution therefor of a solution containing a larger percentage of silver nitrate. But the plaintiff contends that without regard to the usual standard of the prudent man the violation of a statute is a wrong which becomes actionable when there is established the essential element of proximate cause. After reviewing apparent discrepancies in some of our decisions the Court held in *Ledbetter's case* that the failure, without legal excuse, to obey the provisions of a statute or ordinance imposing a public duty is negligence, which, if the efficient cause of an injury, entitles the plaintiff to recover. *Ledbetter v. English,* 166 N. C., 125. This familiar principle has been recognized in a number of subsequent decisions. *Zagier v. Express Co.,* 171 N. C., 692; *Stone v. Texas Co.,* 180 N. C., 546; *Albritton v. Hill,* 190 N. C., 429; *Gillis v. Transit Corporation,* 193 N. C., 346; *Peters v. Tea Co.,* 194 N. C., 172. In our view of the case it is not necessary to go into a minute discussion of the

rationale of proximate cause. We may grant that under these and other cases if the duty enjoined by the statutes were absolute or unqualified in the sense given above and the defendant's breach of the statutes were proved or admitted as the proximate cause of the injury, the principle advanced would be available to the plaintiff; but, as we have said, the duty is not absolute, as in the cited cases. In these circumstances the specific question is whether the defendant is liable in damages under the general principles pertaining to malpractice.

Ordinarily the engagement of a physician who undertakes to treat a patient implies (1) that he possesses the degree of learning, skill, and ability requisite to the practice of his profession, (2) that he will exercise ordinary and reasonable care in the application of his knowledge and skill, and (3) that he will use his best judgment in the treatment and care of his patient. *Brewer v. Ring,* 177 N. C., 476; *Thornburg v. Long,* 178 N. C., 589; *Nash v. Royster,* 189 N. C., 408.

Whether the defendant's conduct measured up to this standard of duty becomes material only in case the responsibility of providing the prescribed solution devolved upon him; and in determining the latter point we must return to the evidence.

At the suggestion of the defendant the plaintiff's mother went to a hospital of her own selection, the physician's bill and the hospital's bill being entirely distinct. She was attended by a graduate nurse (employed by the hospital) who had served in hospitals in Greenwich, Newark, and Atlantic City. In the Baptist Hospital were maternity wards, and rooms into which newborn infants were taken. The plaintiff was in a room of the latter class, in which were the medicine cabinet, the instrument cabinet, supply closets, and a table supporting the bassinet in which the infant lay. The nurse was engaged in the usual course of her business in the hospital; she had not been selected or employed by the defendant. She inquired of him whether she should put the drops into the baby's eyes, and receiving an affirmative answer she went to the medicine cabinet and took out a bottle labeled "silver nitrate." The percentage was illegible. Knowing that a solution of only one per cent was usually kept there she filled a dropper with the stronger solution unfortunately and instilled it while the defendant held open the infant's eyes. It is shown by the plaintiff's evidence that according to the practice prevailing among physicians of good reputation before and since the statutes referred to were enacted the solution is frequently, and in fact is usually, instilled by the nurse.

It is to be borne in mind that the solution was kept by the hospital in a medicine cabinet for convenient use; it was under the control of the hospital; under control of the nurse. Authority to administer it was

given the nurse equally with the physician. It is contended that the defendant was free either to discharge the imposed duty himself or leave it to be discharged by the nurse; that he left it to her; and that he was absolved from responsibility. Without a definite decision of this question it may be observed that as the hospital undertook to furnish a nurse for the mother, and medicines, appliances and instruments, there is no evidence which discloses such culpability or malpractice on the part of the defendant as should subject him to liability in damages. It follows that there was no error in dismissing the second cause of action.

There are several exceptions to the testimony, but in their application to evidence which was material and relevant to the questions involved they are untenable and must be overruled. Judgment

Affirmed.