McCULLOUGH v HUTZEL HOSPITAL

Docket No. 77-2735. Submitted December 11, 1978, at Detroit.—Decided January 17, 1979.

Plaintiffs, Ophelia McCullough and her husband Sedrick McCullough, Jr., brought a medical malpractice action against Hutzel Hospital and doctors Charles R. Boyce and George E. LaCroix for damages incurred as a result of defendants' alleged negligence in failing to properly perform a tubal ligation on Ophelia. The defendant doctors are specialists in obstetrics and gynecology who undertook to supervise the care rendered to Ms. McCullough at Hutzel Hospital. Hutzel being a teaching hospital, the actual surgery was performed by a resident taking advanced training. The sterilization surgery failed. Ophelia became pregnant and was subsequently forced to accede to a therapeutic abortion, ligation of the remaining fallopian tube and finally a hysterectomy. A jury in Wayne Circuit Court, Horace W. Gilmore, J., returned a verdict in favor of plaintiffs for $100,000. Plaintiffs claim against Hutzel Hospital was settled for $40,000 prior to trial. Judgment in the amount of $60,000 was entered against the defendant doctors and they appeal. Defendants claim that because they did not actually perform the surgery, but were merely responsible for supervising the resident who did, that they were not practicing their specialty and are therefore not to be held to the national standard of care applicable to specialists. Secondly, they claim error on the admission of testimony of plaintiffs' expert wit-

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 110.
[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 116, 119.
[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 205-207.

Malpractice testimony: Competency of physician or surgeon from on locality to testify, in malpractice case, as to standard of care required of defendant practicing in another locality. 37 ALR3d 420.

Medical malpractice: Necessity and sufficiency of showing of medical witness' familiarity with particular medical or surgical technique involved in suit. 46 ALR3d 275.

ness, Dr. Kalman Gold, on the applicable standard of care contending that because Dr. Gold admitted he was not familiar with procedures at Hutzel Hospital, he was not qualified to testify regarding the applicable standard of care. *Held:*

1. Specialists who undertake to supervise the care given to a surgical patient at a teaching hospital have a duty to see that the surgery performed by a resident taking advanced training at the hospital is done properly because, as specialists, they have the necessary qualifications and training to judge the competency of the resident's performances. Failure to take reasonable care in ascertaining that the surgery was completely performed renders them liable for resulting damages.

2. Dr. Gold was qualified to testify as an expert witness and the admission of his testimony was not error. The rule that an expert witness must be familiar with a hospital or hospitals in the same geographical area (locality rule) does not apply to a specialist who teaches his specialty to other physicians in a large well-equipped hospital in a metropolitan area, is familiar with procedures in other teaching hospitals and is familiar with the standard of care ordinarily utilized by specialists in supervising other physicians in training.

Affirmed.

1. NEGLIGENCE — PHYSICIANS AND SURGEONS — SPECIALISTS — STAN-
   DARD OF CARE — DAMAGES.

   Specialists in obstetrics and gynecology who undertake to supervise the care rendered to a gynecological surgery patient at a teaching hospital may be liable for malpractice damages incurred as a result of their alleged negligence in the performance of a tubal ligation operation, even though the surgical procedure was actually performed by a resident taking advanced training at the hospital, because it was their duty to see that the surgery was performed in a proper manner, it is their skill and training as specialists which fits them for that task and their advanced learning which enables them to judge the competency of the resident's performance; therefore, failure to take reasonable care in ascertaining that the surgery was completely performed renders them liable for the resulting damages.

2. NEGLIGENCE — MALPRACTICE — PHYSICIANS AND SURGEONS —
   GENERAL PRACTITIONERS — SPECIALISTS — STANDARD OF CARE.

   A general practitioner is required to use that degree of diligence and skill which is ordinarily possessed by the average of the members of the medical profession in similar localities, giving consideration to the state of the art at the time; specialists, on

the other hand, are held to the standard of a reasonable specialist practicing medicine in the light of present day scientific knowledge without regard to geographical circumstances.

3. Witnesses — Experts — Negligence — Malpractice — Physicians and Surgeons — Specialists — Teaching Hospitals — Standard of Care — Supervision of Other Physicians.

The rule that an expert medical witness must be familiar with the procedures in a particular hospital or other hospitals in the same geographical area does not apply to a witness who is a specialist in obstetrics and gynecology and who testifies as an expert witness in a medical malpractice action against defendants, who are also specialists in obstetrics and gynecology and who allegedly failed to properly supervise a resident at a teaching hospital who performed the surgery while taking advanced training at the hospital, where the expert witness (a) has been engaged in teaching his speciality to other physicians in a large well-equipped hospital in a major metropolitan area, (b) is familiar with procedures in other teaching hospitals and (c) is familiar with the standard of care ordinarily utilized by gynecologists in supervising other physicians in training.

*Barbara, Ruby, Domol, Bowerman, Miller & Aaron,* for plaintiffs.

*Kerr, Wattles & Russell,* for defendants.

Before: DANHOF, C.J., and R. M. MAHER and D. C. RILEY, JJ.

PER CURIAM. Plaintiffs Ophelia McCullough and Sedrick McCullough, Jr., brought this medical malpractice action to recover for damages incurred as a result of defendants' alleged negligence in failing to perform properly a tubal ligation on plaintiff Ophelia McCullough. A few months after she was, according to hospital records, rendered incapable of conception, Ms. McCullough discovered that she was pregnant. The preexisting health problem which had led to her decision to undergo sterilization forced her to accede to a therapeutic abortion

and ligation of the remaining fallopian tube. Subsequently, a hysterectomy was also performed.

Following trial, the jury returned a verdict in favor of plaintiffs in the amount of $100,000. Defendant hospital having settled plaintiffs' claim against it prior to trial for the sum of $40,000, judgment in the amount of $60,000 was entered against defendant doctors. From this judgment, they appeal as of right.

Defendants' sole allegation of error concerns the admission of testimony of plaintiffs' expert witness, Dr. Kalman Gold, on the applicable standard of care. Dr. Gold is a board-certified specialist in obstetrics and gynecology, licensed in Ohio and Michigan. He practices in Toledo, where he is on the staffs of several hospitals and teaches a clinical course at a medical school. Defendants are specialists in obstetrics and gynecology who undertook to supervise the care rendered to Ms. McCullough at Hutzel Hospital. Hutzel being a teaching hospital, the actual surgery was performed by a resident taking advanced training at the hospital.

Defendants claim that because they did not actually perform the surgery, but were merely responsible for supervising the resident who did, they were not practicing their speciality, and are therefore not to be held to the national standard of care applicable to specialists, see *Siirila v Barrios*, 398 Mich 576; 248 NW2d 171 (1976), *Naccarato v Grob*, 384 Mich 248; 180 NW2d 788 (1970). Because Dr. Gold admitted that he was not familiar with procedures at Hutzel, defendants argue, he is not qualified to testify regarding the applicable standard of care. Defendants, in effect, argue for a locality rule for specialists teaching clinical medicine in hospitals. We reject defendants' arguments for two reasons: First, we find that defend-

ants were engaged in the practice of their specialty in caring for Ms. McCullough. Second, the locality rule does not apply to specialists engaged in teaching their specialty.

When plaintiff entered Hutzel Hospital for gynecological surgery, defendants assumed responsibility for her care. Even though the surgical procedure was actually performed by a resident, defendants were under a duty to see that it was performed properly. It is their skill and training as specialists which fits them for that task, and their advanced learning which enables them to judge the competency of the resident's performance. Their failure to take reasonable care in ascertaining that the surgery was competently performed renders them liable for the resulting damages.[1] We reject defendants' argument that supervision of a patient's care does not constitute practice of medicine.

It has long been the rule that a general practitioner is required "to use that degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities, giving due consideration to the state of the art at the time", *Miller v Toles,* 183 Mich 252, 257; 150 NW 118 (1914). See also *Lince v Monson,* 363 Mich 135; 108 NW2d 845 (1961). Specialists, on the other hand, are held to the standard of "a reasonable specialist practicing medicine in the light of present day scientific knowledge", without regard to geographical circumstances, *Naccarato v Grob,* 384 Mich 248, 254; 180 NW2d 788 (1970). Even as to general practitioners, however, the trend of authority is away

---

[1] We must point out that defendants' liability is not predicated on the negligence of the resident, but upon their own negligence in failing to provide adequate supervision, *cf. Abbe v Woman's Hospital Assn,* 35 Mich App 429; 192 NW2d 691 (1971).

from the locality, see *Sirila v Barrios, supra,* opinion by WILLIAMS, J.

The locality rule had its origins in the 19th century, a time when the level of practice in remote rural areas was considerably lower than in urban areas, where opportunities for continuing education and broad experience were greater, see *Siirila v Barrios, supra,* at 612-613. As Justice WILLIAMS notes in his concurring opinion in *Siirila,* the situation today is much different:

"It is evident that today's physician operates within a milieu in which the "coach and four", *Wiggins v Piver,* 276 NC 134, 140; 171 SE2d 393, 396 (1970), has been replaced by sophisticated communication and improved transportation. '[M]edical journals, closed circuit television presentations, special radio networks for doctors, tape recorded digests of medical literature, and current correspondence courses', 23 Vand L Rev 732, are not uncommon.

"All licensed physicians meet minimum standards required by state licensing boards. The increasing excellence of medical schools and the free interchange of scientific information have a 'consequent tendency to harmonize medical standards throughout the country'. *Cook v Lichtblau,* 144 So 2d 312, 315 (Fla App, 1962), quoting *Montgomery v Stary,* 84 So 2d 34, 39 (Fla, 1955).

"Development of the locality rule preceded accreditation of medical schools, which began in 1906 under the AMA Council on Medical Education." *Siirila v Barrios, supra,* at 614. (Footnotes omitted.)

The result of improved education, Justice WILLIAMS concluded, is improved levels of practice, *Siirila v Barrios, supra,* at 615-616:

"Uniform and improved levels of medical practices must inevitably result from the encouragement of continuing medical education, the prevalence of regional

medical centers, standardization and excellence of modern medical schools and training, the dissemination of reports via journals, and instant communication devices." (Footnote omitted.)

We think a situation such as that presented in the case at bar is a singularly inappropriate one for application of the locality rule. Defendants are specialists, engaged in teaching their specialty to other physicians in a large, well-equipped hospital in a major metropolitan area. They suffer none of the disadvantages, such as lack of access to modern equipment and ignorance of modern techniques, which led to the development of the locality rule for general practitioners, see *Siirila, supra*. To adopt a rule that an expert witness must be familiar with procedures in the particular hospital in question—or even in other hospitals in the same geographical area—would be a step backward. It is a step we decline to take.

Dr. Gold testified that he was familiar with procedures in teaching hospitals in Toledo and, from his student days, in Ann Arbor. He professed to be familiar with the standard of care ordinarily utilized by gynecologists in supervising other physicians in training. We are of the opinion that the trial court did not abuse his discretion in finding Dr. Gold qualified to testify as an expert, *Siirila v Barrios, supra, LeBlanc v Lentini*, 82 Mich App 5; 266 NW2d 643 (1978).

Affirmed. Plaintiffs may tax their costs.