OPINION OF THE COURT
David B. Saxe, J.
May a physician who was chairman of a hospital medical department, a member of whom treated the plaintiff, be sued in tort where liability is predicated, in part, upon the failure of the chairman to provide proper supervision of residents during the postoperative recovery period and upon his failure to develop and implement appropriate rules and regulations governing the quality of staff available to care for and provide good and prudent medical care to the plaintiff when she was a patient?
The facts are these: The plaintiff, Ms. Diane Maxwell, entered New York Hospital in Manhattan for an elective tubal ligation. During this surgical procedure, it is alleged that Dr. Cole, her attending physician, punctured her bladder.
It is claimed that during the immediate 24-hour postoperative period, none of the tests that should have been performed to detect the bladder perforation were undertaken by members of the staff of New York Hospital. As a result, urine escaped from the punctured hole in the bladder into the tissues of Ms. Maxwell’s abdomen and thighs, ultimately causing this tissue to *598 slough off. During this period, her medical condition deteriorated and she entered septic shock. She claims massive mutilation and scarring requiring plastic surgery with multiple grafts.
One of the defendants is Dr. William Ledger, Chairman of the Department of Obstetrics and Gynecology at New York Hospital. This is the department which listed Dr. John Cole as an attending physician and the department which provided the plaintiff with her immediate postoperative care.
The claim made against Dr. Ledger, which is under scrutiny here as a result of his application for an order dismissing the complaint as to him and for summary judgment, basically asserts a cause of action predicated upon his failure: (a) to develop medically acceptable rules and regulations regarding physicians* and qualifications of the attending staff; and (b) enforce those rules and regulations in existence with respect to supervising the attending staff; and (c) his failure to adequately supervise the resident staff and to provide rules and regulations for the resident staff as to the necessity in certain circumstances to seek prompt consultation with attending physicians.
Dr. Ledger’s principal argument in opposition is that since he did not render any medical care or treatment personally to Ms. Maxwell, and since there was no physician-patient relationship between them, he cannot be liable for what he sees to be a claim of medical malpractice.
I do not accept Dr. Ledger’s narrow reading of a physician’s responsibility. In support of the plaintiff’s cause of action, a medical affirmation is submitted stating, in essence, that it was a departure from accepted practice not to provide attending physician level coverage to a critically ill patient if her physician is unavailable and further that it was the duty of the chief of service, such as Dr. Ledger, to establish rules for the supervision of residents and interns when private attending physicians were not available.
A failure on the part of a chief of service to supervise residents and interns and to develop and implement rules, regulations and guidelines for treatment and supervision is a claim for breach of duty which rested initially with the hospital but which was allegedly delegated by the hospital to Dr. Ledger.
In Darling v Charleston Community Mem. Hosp. (33 Ill 2d 326, 211 NE2d 253 [1965], cert denied 383 US 946 [1966]), the court held that the hospital had a duty to supervise those providing medical care on its premises. One of the bases for liability in that case was the failure of the hospital’s nursing staff to report the patient’s deteriorating condition to someone in a position to *599 rectify the situation. Here, it is alleged that the residents and interns failed to call in more experienced physicians as Ms. Maxwell’s condition became progressively worse during the immediate postoperative period.
The responsibility for the supervision of these medical personnel within the hospital structure lay with the chief of service, Dr. Ledger. So, it is not an unusual application of the doctrine of respondeat superior (Bing v Thunig, 2 NY2d 656 [1957]) to find that although the hospital is generally responsible for its employees, that responsibility may be delegated in appropriate circumstances.
In this case, it is claimed that the responsibility for supervision of the medical personnel lay in the hands of the chief of service, Dr. Ledger. With a broadened view of a hospital’s role as a provider of health care services (Fridena v Evans, 127 Ariz 516, 622 P2d 463 [1980]) comes an expanded notion of its supervisory responsibilities over those who practice medical care on its premises. That supervisory responsibility, it is claimed was delegated to Dr. Ledger. If the chief of service fails to provide medically acceptable rules and regulations which would insure appropriate supervision of ill patients, then it is reasonable to find that a breach of the standards of medical care by that individual has occurred.
Accordingly, summary judgment is at this time inappropriate. There needs to be full discovery to ascertain whether, in fact, Dr. Ledger was designated to carry out the duties and responsibilities claimed for him in his capacity as department chief of service at a major New York hospital. If those supervisory responsibilities are demonstrated to be beyond his actual grant of power, then it would be appropriate for Dr. Ledger to renew this motion. The motion for summary judgment is therefore denied at this time.