ALTON RAY MOZINGO, JR., BY HIS GUARDIAN AD LITEM, ALLEN G. THOMAS; AND ALTON RAY MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL, INC., MELINDA WARREN, RICHARD JOHN KAZIOR

No. 162A91

(Filed 22 April 1992)

1. **Physicians, Surgeons, and Allied Professions § 11.1 (NCI3d) — on-call supervising physician — duty to patient treated by resident**

     A physician who undertook to provide on-call supervision of obstetrics residents at a teaching hospital and who knew that the residents were actually treating patients owed the infant plaintiff a duty of reasonable care in supervising the resident who delivered plaintiff at his birth.

     **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286, 289, 292.**

2. **Physicians, Surgeons, and Allied Professions § 17 (NCI3d) — on-call supervising physician — breach of standard of care — sufficient forecast of evidence**

     Plaintiffs' forecast of evidence established a genuine issue of material fact as to whether defendant breached the applicable standard of care for on-call physicians supervising obstetrics residents at a teaching hospital where the forecast

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

of evidence tended to show that the infant plaintiff received severe injuries during birth when his shoulder became wedged in the mother's pelvic cavity; the resident who delivered the infant plaintiff called defendant at his home two miles away and told him that she was having problems with the delivery because the baby was suffering from shoulder dystocia; when defendant arrived at the hospital, the delivery of the infant plaintiff had been completed; the affidavits of defendant's own experts stated that an on-call supervising physician may take calls at home "unless a problem is specifically anticipated"; and the affidavit and deposition of plaintiffs' expert stated that defendant should have called in at the beginning of his on-call coverage and periodically thereafter to check on the status of patients, and that defendant did not meet the accepted medical standard for on-call supervising physicians given the known medical condition of the mother and the known risk factors for this pregnancy which included a significant risk factor of shoulder dystocia.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286, 289, 292.**

3. **Physicians, Surgeons, and Allied Professions § 11.1 (NCI3d) — negligent supervision of resident physicians — contract not shield from liability**

A contract providing for supervision of resident physicians in a manner which substantial evidence tends to show is negligent will not shield a supervising physician from legal liability for providing such negligent supervision.

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 286.**

Justice MEYER dissenting.

Justice LAKE did not participate in the consideration or decision of this case.

ON appeal pursuant to N.C.G.S. § 7A-30 of a decision by a divided panel of the Court of Appeals, 101 N.C. App. 578, 400 S.E.2d 747 (1991), reversing summary judgment for the defendant Dr. Richard John Kazior entered by *Griffin, J.,* at the 21 March 1990 Session of Superior Court, PITT County. Heard in the Supreme Court on 12 December 1991.

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

*Young, Moore, Henderson & Alvis, P.A., by Jerry S. Alvis and Brian E. Clemmons, for the defendant-appellant.*

*Narron, Holdford, Babb, Harrison & Rhodes, P.A., by William H. Holdford and Elizabeth B. McKinney, for the plaintiff-appellees.*

MITCHELL, Justice.

The issue before this Court is whether the Court of Appeals erred in reversing the trial court's grant of summary judgment in favor of the defendant Dr. Richard John Kazior. To resolve this issue, we must decide whether there was a forecast of evidence tending to show that the defendant, in his capacity as an on-call supervising physician, owed a duty of reasonable care to the plaintiffs. For reasons differing from those stated in the opinion of the Court of Appeals, we conclude that the forecast of evidence before the trial court tended to show that the defendant had such a duty, and we affirm the holding of the Court of Appeals.

As summary judgment was entered for the defendant by the trial court, the facts set forth are taken from the forecast of evidence found in allegations in the complaint, the depositions, the stipulations of the defendant Dr. Richard John Kazior and others, and the affidavits in the record on appeal. We express no opinion, of course, as to what the plaintiffs will be able to prove at trial.

In this action, the plaintiff Alton Mozingo, Jr., by his guardian ad litem, seeks money damages from the defendant Dr. Richard John Kazior for injuries allegedly caused by Dr. Kazior's negligent supervision of resident physicians at Pitt County Memorial Hospital ("Hospital"). Mozingo, Jr., alleges that the resident physicians who delivered him at his birth did so negligently, causing him severe injuries. The plaintiff Alton Mozingo, the father of the injured child plaintiff, seeks money damages for the loss of services of his son.

The forecast of evidence before the trial court tended to show that during December 1984 Dr. Kazior was an employee of Eastern OB/GYN Associates ("Eastern"). Eastern had entered into an agreement with the East Carolina University Medical School to provide on-call supervision of the interns and residents in the obstetrics residency program at the Hospital. On the afternoon of 5 December 1984, Sandra Dee Mozingo was admitted to the Hospital for the delivery of her second child, Alton Mozingo, Jr., one of the two plaintiffs in the present case. Two residents in the post-graduate

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

training program in obstetrics treated Sandra Dee Mozingo who was not under the care of a private physician.

At 5 p.m. on 5 December 1984, the defendant Dr. Kazior began his assignment to provide on-call services for the obstetrics residents at the Hospital who were caring for patients. Dr. Kazior remained at his home available to take telephone calls from the residents. Shortly before 9:45 p.m., Dr. Kazior received a telephone call from Dr. Melinda Warren, a second-year resident at the Hospital, informing him that she had encountered a problem with the delivery of Mozingo, Jr. The baby was suffering shoulder dystocia, a condition in which a baby's shoulder becomes wedged in the mother's pelvic cavity during delivery. Dr. Kazior stated that he would be there immediately and left his home for the Hospital located approximately two miles away. When Dr. Kazior arrived at the hospital, the delivery of Mozingo, Jr., had been completed.

On 3 December 1987, the plaintiffs filed an amended complaint alleging *inter alia* negligent supervision of the obstetrics residents by Dr. Kazior. The plaintiffs alleged that Alton Mozingo, Jr., suffered severe and permanent injuries due to the shoulder dystocia and that Dr. Kazior's negligent supervision of the residents actually performing the delivery proximately caused these injuries. The plaintiffs alleged that Dr. Kazior "failed to make a reasonable effort to monitor and oversee the treatment administered by the defendant, Melinda Warren, and the agents of the Defendant, Hospital." Dr. Kazior filed an answer denying all allegations of negligence on his part.

The defendant Dr. Kazior filed a motion for summary judgment on 6 October 1989 supported by four affidavits, the pleadings, and other material obtained during discovery. Three of the affidavits were given by the heads of the Departments of Obstetrics and Gynecology of other teaching hospitals in North Carolina. The affidavits from the Chairmen of the Departments of Obstetrics and Gynecology of the Bowman-Gray School of Medicine of Wake Forest University, the University of North Carolina School of Medicine, and the Duke University School of Medicine stated that the protocol of their respective medical schools "permitted the Attending On Call physicians to afford coverage during the hours of their assignment by either being present in the hospital or, unless a problem is specifically anticipated, by being present at their residence or

other specified place and immediately available to a telephone so as to come immediately to the hospital upon request."

The plaintiffs responded with the sworn affidavit of Dr. William Dillon and the transcript of the deposition of Dr. Dillon, a board-certified obstetrician and an expert witness for the plaintiffs, who stated that an on-call supervising physician should call in periodically during his coverage shift. Dr. Dillon in his affidavit stated that Dr. Kazior had a "responsibility, when he came *on call*, to find out what obstetrical patients had been admitted to the hospital, their condition and to formulate a plan of management." (Emphasis added). Dr. Dillon in his deposition also stated, "I think in at least a minimum sense a supervising physician needs to make contact sometimes, preferably at the beginning, and maybe a few times in between, as to what is occurring on his service." Dr. Dillon further stated, "I think that what we are talking about is what is proper supervision and what is not proper supervision. . . . I think that there is a certain standard when one is supervising residents that must be met. If a private physician is going to supervise residents, he must meet those standards." Further, according to Dr. Dillon, Sandra Dee Mozingo "was a known gestational diabetic with extreme obesity and no established estimated fetal weight notwithstanding sonography. As such there was a known significant risk of a macrosomic baby [an extremely large baby]. Therefore, there were very significant known risk factors for this pregnancy which included a known significant risk factor of shoulder dystocia."

The trial court granted summary judgment for the defendant Dr. Kazior on 29 December 1989, and the plaintiffs filed a notice of appeal. Subsequently, the trial court rescinded summary judgment and received into evidence Dr. Kazior's stipulation dated 28 March 1988. Thereafter, the trial court again granted summary judgment in favor of Dr. Kazior on 27 March 1990. The plaintiffs again filed a notice of appeal with the Court of Appeals.

A divided panel of the Court of Appeals reversed the trial court's entry of summary judgment in favor of the defendant Dr. Kazior, concluding that he owed the plaintiffs a duty of care arising out of a contract between Eastern and East Carolina University Medical School. The Court of Appeals concluded, however, that the defendant owed no duty of reasonable care to the plaintiffs based on a doctor-patient relationship because no such relationship

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

existed. For different reasons, we affirm the holding of the Court of Appeals reversing the trial court's entry of summary judgment for the defendant Dr. Kazior.

Dr. Kazior contends that the Court of Appeals erred in reversing the trial court's grant of summary judgment in his favor.

The North Carolina Rules of Civil Procedure provide that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982); *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. *Dickens*, 302 N.C. 437, 276 S.E.2d 325. All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion. *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972).

*Collingwood v. General Electric Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Summary judgment is a drastic measure and should be used with caution. *Williams v. Carolina Power and Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979).

The gravamen of the plaintiffs' claim is that the defendant Dr. Kazior negligently supervised the obstetrics residents who cared for Mozingo, Jr., and his mother during his birth and that this negligent supervision proximately caused the plaintiffs' injuries. "To recover damages for actionable negligence, a plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach." *Waltz v. Wake County Bd. of Education*, 104 N.C. App. 302, 304-05, 409 S.E.2d 106, 107 (1991)

(quoting *Matthieu v. Piedmont Natural Gas Co.*, 269 N.C. 212, 217, 152 S.E.2d 336, 341 (1967) ), *disc. rev. denied*, 330 N.C. 618, 412 S.E.2d 96 (1992).

[1]   Dr. Kazior argues that the parties' forecasts of evidence in the trial court established as a matter of law that he owed no duty of care to the plaintiffs because no doctor-patient relationship existed. Uncontroverted evidence before the trial court tended to show that Dr. Kazior's first contact with Alton Mozingo, Jr., and his parents occurred when Dr. Kazior arrived at the Hospital after the delivery of Mozingo, Jr., on 5 December 1984, in response to the telephone call from Dr. Warren. However, the defendant Dr. Kazior stipulated that he was responsible for supervision of the obstetrics residents at the Hospital on the night of 5 December. In a stipulation dated 28 March 1988, the defendant stated he had "responsibility for supervision of the OB/GYN residents and interns at the time of the birth of Alton Ray Mozingo, Jr." "Stipulations are viewed favorably by the courts because their usage tends to simplify, shorten, or settle litigation as well as save costs to litigants." *Pelham Realty Corp. v. Board of Transportation*, 303 N.C. 424, 430-31, 279 S.E.2d 826, 830 (1981). *See also Miller v. Marrocco*, 63 Ohio App. 3d 293, 296, 578 N.E.2d 834, 836 (1989) (physician in stipulation admitted he owed a duty of care to plaintiff patient and had breached that duty). "Such stipulations continue in force for the duration of the controversy and preclude the later assertion of a position inconsistent therewith." *In re Ordinance of Annexation No. 1977-4*, 296 N.C. 1, 14, 249 S.E.2d 698, 706 (1978). Based on this stipulation and the uncontested fact that Dr. Kazior knew the residents at the Hospital were actually treating patients when he undertook the duty to supervise the residents as an on-call supervising physician, we conclude that he owed the patients— including Mozingo, Jr.— a duty of reasonable care in supervising the residents. Further, we conclude that the defendant's duty of reasonable care in supervising the residents was not diminished by the fact that his relationship with the plaintiffs did not fit traditional notions of the doctor-patient relationship.

The modern provision of medical care is a complex process becoming increasingly more complicated as medical technology advances. *Moeller v. Hauser*, 237 Minn. 368, 371, 54 N.W.2d 639, 642 (1952); *Maxwell v. Cole*, 126 Misc. 2d 597, 599, 482 N.Y.S.2d 1000, 1002 (1984); *Grubb v. Albert Einstein Med. Center*, 255 Pa. Super. 381, 396, 387 A.2d 480, 487 (1978). Large teaching hospitals,

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

such as the Hospital in the present case, care for patients with teams of professionals, some of whom never actually come in contact with the treated patient but whose expertise is nevertheless vital to the treatment and recovery of patients. One commentator states,

> In the delivery of health care services in an institutional setting it is increasingly difficult to determine factually who is in control of whom. As allied health professionals proliferate and are accorded a greater degree of independence from the direct supervision and control of the attending physician, the matter of the right to control another's actions becomes a very difficult question both as a matter of fact and of law.

Arthur F. Southwick, *The Law of Hospital and Health Care Administration* 580 (2d ed. 1988). Another commentator states,

> The health care environment requires cooperation and teamwork. Physicians are dependent upon many other health care professionals in a health care institution to ensure good patient care. . . . The health care professional is obligated to take actions to protect the interest of patients, who are innocent parties in the health care environment. A failure to act in the interest of good patient care or in the protection of the public welfare creates liability.

John Dale Dunn, *Practice with co-providers, in Legal Medicine: Legal Dynamics of Medical Encounters* 434, 438 (2d ed. 1991).

Medical professionals may be held accountable when they undertake to care for a patient and their actions do not meet the standard of care for such actions as established by expert testimony. Thus, in the increasingly complex modern delivery of health care, a physician who undertakes to provide on-call supervision of residents actually treating a patient may be held accountable to that patient, if the physician negligently supervises those residents and such negligent supervision proximately causes the patient's injuries. *See* Jerry Zaslow, *What is Malpractice in General Surgery?*, Medical Trial Technique Quarterly 272, 285-86 (1981 Annual) (discussing supervisory duties of surgical staff in a "teaching institution"). *See also* Stewart R. Reuter, *Some Legal Aspects of Angiography and Interventative Radiology*, Medical Trial Technique Quarterly 59, 67 (1987 Annual) ("Physicians with supervisory responsibilities must

act in a reasonably prudent manner" or face tort liability for negligent supervision).

Courts in other jurisdictions also have recognized a duty of care owed by a supervising physician to a patient actually cared for by a supervised resident. *McCullough v. Hutzel Hosp.*, 88 Mich. App. 235, 276 N.W.2d 569 (1979); *Maxwell v. Cole*, 126 Misc. 2d 597, 482 N.Y.S.2d 1000 (Sup. Ct. 1984) (rejecting the defendant's "narrow reading of [a supervising] physician's responsibility" and concluding that failure "to provide medically acceptable rules and regulations which would insure appropriate supervision of ill patients" is a reasonable basis on which to find "a breach of the standards of medical care by that individual [defendant physician]"); *see also Moeller v. Hauser*, 237 Minn. 368, 54 N.W.2d 639 (1952) (although a doctor-patient relationship existed, the appellate court affirmed the verdict finding the supervising doctor liable for his patients' injuries caused by the negligent post-operative care rendered by resident physicians). In *McCullough v. Hutzel Hosp.*, 88 Mich. App. 235, 276 N.W.2d 569 (1979), for example, the appellate court concluded that a supervising physician owed the plaintiff a duty of care in supervising the residents actually caring for the plaintiff. *Id.* at 239, 276 N.W.2d at 571.

The plaintiff in that case claimed that the defendants improperly performed a tubal ligation on her. *Id.* at 237, 276 N.W.2d at 571. Because the surgery was performed in a teaching hospital, a resident supervised by the defendants actually performed the operation. *Id.* at 238, 276 N.W.2d at 570. A few months after the operation, the plaintiff became pregnant and underwent a therapeutic abortion and a hysterectomy. *Id.* at 237-38, 276 N.W.2d at 570. The jury awarded the plaintiff $100,000 in damages. *Id.* at 238, 276 N.W.2d at 570. The court in upholding the verdict stated, "Even though the surgical procedure was actually performed by a resident, defendants were under a duty to see that it was performed properly. . . . Their [defendants'] failure to take reasonable care in ascertaining that the surgery was competently performed renders them liable for the resulting damages." *Id.* at 239, 276 N.W.2d at 571.

In the present case, the defendant Dr. Kazior stipulated that he assumed the responsibility for the on-call supervision of the obstetrics residents at the Hospital. As a result, we have concluded

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

that the defendant owed Mozingo, Jr., a duty of reasonable care in supervising the residents who actually cared for him.

[2] The defendant Dr. Kazior further argues that the affidavits of the chairmen of the three teaching hospitals in North Carolina established that he did not breach the applicable standard of care for on-call supervising physicians. These affidavits are not as unequivocal as the defendant and the dissent suggest. In these affidavits, each chairman using nearly identical language states that an on-call supervising physician may take calls at home "unless a problem is specifically anticipated." Thus, according to the defendant's own experts, simply remaining at home and available to take telephone calls is not always an acceptable standard of care for supervision of residents.

In opposition to the defendant's motion, the plaintiffs introduced the affidavit and deposition of Dr. Dillon in which he stated that the defendant Dr. Kazior did not meet the accepted medical standard for an on-call supervising physician, given the known medical condition of Sandra Dee Mozingo. In Dr. Dillon's opinion, the defendant Dr. Kazior should have called in at the beginning of his on-call coverage and periodically thereafter to check on the status of patients. The evidence forecast by the plaintiffs establishes a genuine issue of material fact as to whether the defendant doctor breached the applicable standard of care and thereby proximately caused the plaintiffs' injuries. Such issues are questions for the jury. *Turner v. Duke Univ.*, 325 N.C. 152, 162, 381 S.E.2d 706, 712 (1989). Therefore, without expressing any opinion as to what the plaintiffs will be able to prove at trial, we conclude that the trial court erred by entering summary judgment for the defendant.

The dissent makes much of a contract between Dr. Kazior's employer and East Carolina University Medical School, contending that the contract somehow relieved Dr. Kazior of the responsibility for any negligence on his part in supervising the obstetrics residents at the Hospital. The precise terms of the contract are not before us, as it was not before the trial court and is not a part of the record on appeal. However, the defendant's forecast of evidence did refer to certain provisions of the contract.

[3] Notwithstanding the assertions made in the dissent, we recognize the general principle that a physician may contractually limit the extent and scope of his employment. *E.g.*, *Childers v. Frye*, 201 N.C. 42, 158 S.E. 744 (1931); *Nash v. Royster*, 189 N.C.

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

408, 127 S.E. 356 (1925). Here, however, the defendant has stipulated that he undertook the duty of on-call supervision of—not merely consultation with—the resident physicians actually caring for the plaintiff Alton Ray Mozingo, Jr., and his mother. The plaintiffs' forecast of evidence tends to show that the defendant performed his duty in this regard in a negligent manner. We conclude that a contract providing for supervision of resident physicians in a manner which substantial evidence tends to show is negligent will not shield a supervising physician such as the defendant from legal liability for providing such negligent supervision, at least where, as here, the plaintiff patient was not a party to that contract. *See generally* A. M. Swarthout, Annotation, *Validity and Construction of Contract Exempting Hospital or Doctor from Liability for Negligence to Patient*, 6 A.L.R.3d 704 (1966) (cases cited and analyzed therein and in the supplement); *cf.* 61 Am. Jur. 2d *Physicians and Surgeons* § 304 (1981); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 482-84 (5th ed. 1984).

For the above stated reasons, different from those relied upon in the opinion of the Court of Appeals, we affirm the holding of the Court of Appeals, which reversed the trial court's summary judgment for the defendant.

Affirmed.

Justice LAKE did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

It should be remembered that the plaintiffs' action against the resident physician who attended the birth of Alton Ray Mozingo, Jr., and the hospital is alive and well and will proceed to trial. The only question before this Court is the liability of Dr. Kazior. Dr. Kazior did not at any time examine, treat, care for, or in any other manner act as physician for Sandra Dee Mozingo or Alton Ray Mozingo, Jr., prior to or during the birth of Alton Ray Mozingo, Jr. Prior to the telephone call from the hospital, Dr. Kazior received no request for assistance of any kind from any person with respect to Sandra Dee Mozingo. Upon being notified by telephone that residents attending Mrs. Mozingo had encountered shoulder dystocia, Dr. Kazior immediately went to the hospital, arriving approximately three minutes after he was called, only

to find that the delivery was completed before his arrival. Dr. Kazior's only contact with Mrs. Mozingo and her infant son came after the event of the birth, and there is no claim that anything he did after the event of birth has caused any injury or damage to any plaintiff.

The agreement between East Carolina University Medical School and Eastern OB/GYN Associates, which was entered into prior to Dr. Kazior's employment, provided that the physician employees of Eastern's practice group could fulfill the on-call agreement by remaining at their homes and being immediately available to a telephone to respond to any call from the chief resident in obstetrics and gynecology for advice or assistance with respect to obstetric or gynecologic patients admitted to the hospital but not under the care of a private practitioner. This system of providing *on-call* supervision for resident physicians specializing in obstetrics at Pitt County Memorial Hospital was the same system that was used in the local teaching hospital facilities of Duke University Medical School, the University of North Carolina School of Medicine, and Wake Forest University's Bowman Gray School of Medicine, as testified to by expert physicians from those institutions.

Until today, it has been fairly well settled that absent a physician-patient relationship or vicarious liability based on the negligence of a servant, a physician is liable for his negligence to the same extent as any other individual—a physician is liable in tort when he undertakes responsibility to do some act and negligently performs the act thereby causing injury to a person whom it was reasonably foreseeable might be injured as a consequence of the physician's negligence. *See* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 56 (5th ed. 1984) (physician has no duty to render professional services but having volunteered or agreed to render such services must use due care); 9 Strong's North Carolina Index 3d *Negligence* § 1.1, at 344 (1977) (same). To my knowledge, no court in the country has heretofore held a private physician liable for injuries suffered by an individual whom he has never treated, never met, and never agreed to treat based on that physician's compliance with a contract to provide consultation to and limited on-call supervision of a hospital's resident physician. This is not to say that a physician may never be held accountable for injuries caused by the acts of another physician not in his employ. To find such liability, however, there

must be some evidence that the physician has negligently performed some responsibility voluntarily assumed by him.

In this case, the majority errs in concluding that there exists a genuine issue of material fact concerning Dr. Kazior's liability for the alleged negligent delivery performed by resident physicians. The evidence of record in this case establishes that the residents who performed the delivery were "agent[s], servant[s] or employee[s] of . . . Pitt County Memorial Hospital, Inc." Nothing in the record suggests that the residents were employed by or were servants of Dr. Kazior, and thus no liability may be vicariously imputed to Dr. Kazior for the resident's alleged negligence. *Smith v. Duke University*, 219 N.C. 628, 633, 14 S.E.2d 643, 646 (1941), *overruled on other grounds by Rabon v. Hospital*, 269 N.C. 1, 152 S.E.2d 485 (1967); *cf. Moeller v. Hauser*, 237 Minn. 368, 54 N.W.2d 639 (1952) (hospital vicariously liable for negligence of resident physicians in its employ); *Stuart Circle Hosp. Corp. v. Curry*, 173 Va. 136, 3 S.E.2d 153 (1939) (liability imposed on hospital for negligent acts of interns and nurses).

Moreover, the record does not, as the majority apparently concludes, establish that Dr. Kazior had responsibility for the general supervision of the residents. As the employer of the resident physicians, such responsibility lay with Pitt County Memorial Hospital, Inc. *Riverside v. Loma Linda Univ.*, 118 Cal. App. 3d 300, 173 Cal. Rptr. 371 (1981); *Maxwell v. Cole*, 126 Misc. 2d 597, 599, 482 N.Y.S.2d 1000, 1002 (Sup. Ct. 1984). As with most other duties, a hospital may, in appropriate circumstances, delegate its duty of supervision to others by, for example, entering into an affiliation agreement with a medical school. *Id.*

The mere existence of such an agreement does not, however, end the inquiry of determining who has responsibility for supervision. As with the delegation of all duties, the terms of the agreement between the delegator and the delegatee control. The delegatee will be charged only with the duties that he has voluntarily assumed. Stewart R. Reuter, *Some Legal Aspects of Angiography and Interventative Radiology*, 33 Med. Trial Tech. Q. 59, 67 (1987); *see also Maxwell v. Cole*, 126 Misc. 2d 597, 482 N.Y.S.2d 1000 (Sup. Ct.).

The evidence in this case establishes a number of agreements concerning the supervision of the resident physicians practicing at Pitt County Memorial Hospital. First, the record shows that

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

Pitt County Memorial Hospital, like most other teaching hospitals, entered into an agreement whereby it delegated some or all of its responsibility to supervise the resident physicians of East Carolina University Medical School. Subsequent to this delegation of supervision, the medical school and Eastern OB/GYN Associates entered into an agreement whereby Eastern agreed to provide consultation services to and *limited* supervision of the residents of the obstetrics and gynecology service of Pitt County Memorial Hospital. The parties have not included the agreement in the record on appeal, and thus the Court is not aware of the specific details of the agreement. However, the uncontradicted evidence of record establishes that this agreement provided that Eastern would make its physician employees available at certain times

> to the end that if the chief resident of the obstetrics and gynecology service of Pitt County Memorial Hospital identified a problem or if there was a difficult case, that *chief resident would call* a designated physician employee of Eastern OB/GYN Associates, *and upon call the responding physician would assist the chief resident* in whatever manner appeared to the responding physician to be appropriate.

(Emphasis added.) Specifically, the record establishes that "[i]t was understood by the parties to the agreement [Eastern and the medical school] that the *physician could made [sic] himself available* to the chief resident *by being available to be reached by telephone.*" (Emphasis added.)

Subsequent to the entry of this agreement, Dr. Kazior came into the employ of Eastern as a physician practicing in obstetrics and gynecology. The record is unclear whether Dr. Kazior contracted expressly with Eastern to assume Eastern's responsibility under its agreement with the medical school; however, the record does establish that Dr. Kazior voluntarily assumed responsibility to fulfill Eastern's *contractual obligations*. Having done so, Dr. Kazior thereby became obligated to perform the consultation and limited supervisory duties in a non-negligent manner so as to avoid injuring any persons whom it was reasonably foreseeable might be injured as a result of his actions.

Contrary to the majority's conclusion, Dr. Kazior did not have a duty of *general* supervision of the residents. Pursuant to his employment with Eastern, Dr. Kazior merely assumed responsibility to provide limited supervision of the residents—to remain at

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

home when he was assigned on-call supervision and to make himself available by telephone for advice and assistance to the chief resident. The majority places great importance on a stipulation made by Dr. Kazior but fails to interpret it in connection with and in light of the limited nature of Dr. Kazior's duties under his employer's contract. The stipulation made by Dr. Kazior merely states that he "was the Attending Physician *on Call* for the OB/GYN Service of Pitt County Memorial Hospital with the responsibility for supervision of the OB/GYN residents and interns at the time of the birth of [infant plaintiff]." This stipulation does not contradict the undisputed evidence of Dr. Kazior's limited supervisory duties but, in fact, supports the evidence demonstrating that Dr. Kazior had assumed no more responsibility than to make himself available by telephone for advice and assistance when called by the chief resident.

Moreover, the cases relied upon by the majority do not support the conclusion that Dr. Kazior owed any duty beyond that which he voluntarily assumed pursuant to his employment agreement with Eastern. In *Maxwell v. Cole*, 126 Misc. 2d 597, 482 N.Y.S.2d 1000 (Sup. Ct.), the court considered the liability of a hospital's chief of service for negligent supervision of residents providing post-operative care. The *Maxwell* court denied the physician's motion for summary judgment, concluding that the physician had presented no evidence to rebut the plaintiff's allegations that he had negligently performed his responsibilities "to supervise residents and interns and to develop and implement rules, regulations and guidelines for treatment and supervision." *Id.* at 598, 482 N.Y.S.2d at 1002. The court did not, however, express any opinion as to whether such a duty had in fact arisen. Rather, the court determined that summary judgment was inappropriate as the scope of the physician's duty had not been established. Recognizing that the physician could only be charged with those duties voluntarily assumed by him, the court stated, "If those supervisory responsibilities are demonstrated to be beyond his actual grant of power, then it would be appropriate for Dr. Ledger [the defendant physician] to renew this motion [for summary judgment]." *Id.* at 599, 482 N.Y.S.2d at 1002.

*Moeller v. Hauser*, 237 Minn. 368, 54 N.W.2d 639 (1952), and *McCullough v. Hutzel Hosp.*, 88 Mich. App. 235, 276 N.W.2d 569 (1979), two other cases relied upon by the majority, are inapposite to this case. In those cases, the physicians sought to be held liable

MOZINGO v. PITT COUNTY MEMORIAL HOSPITAL

[331 N.C. 182 (1992)]

were the attending physicians to whom the injured patients were assigned for treatment. As the attending physicians, they had a duty to exercise due care to see that the patients received adequate medical care. The majority correctly notes that the plaintiff in *Moeller* was a patient injured "by the negligent post-operative care rendered by resident physicians." While the physician in that case had assumed some responsibility to supervise the residents who injured the plaintiff, the case against the physician was not predicated on the theory of negligent supervision but upon the theory that the physician had failed to care adequately for a patient for whom he had assumed responsibility to provide medical services. In fact, after examining the hospital's rules and regulations, which vested the staff physicians with responsibility for "the training of internes [sic] and residents," the *Moeller* court concluded that "there is nothing to indicate that [the staff physicians' responsibility to supervise residents] extends to the duties which the residents perform as a part of the general hospital routine." *Moeller*, 237 Minn. at 372, 377, 54 N.W.2d at 642, 645.

Even assuming that the duty undertaken by Dr. Kazior was of such a nature as to permit plaintiff to recover for a breach thereof, the uncontradicted evidence of record shows that Dr. Kazior did not breach his duty. Pursuant to the terms of the contract between Eastern and the medical school, Dr. Kazior was at his home, approximately two miles from the hospital, when he came on call at 5:00 p.m., 5 December 1984.. Plaintiff concedes that Dr. Kazior remained there, with an open telephone line, available to respond to any request for assistance from the chief resident of the obstetrics and gynecology service of the hospital. Plaintiff has not shown that Dr. Kazior was negligent in failing to take any telephone calls or in giving any advice or assistance. When Dr. Kazior received a telephone call informing him that the residents had encountered a birthing problem with one of the hospital's obstetrics patients, Dr. Kazior immediately went to the hospital, arriving approximately three minutes after he was called, to find that delivery was complete.

Plaintiff does not dispute the evidence that Dr. Kazior fully performed the terms of his contract, but instead proffers as evidence of negligence on Dr. Kazior's part an affidavit alleging that "[a]cceptable standards of care require[ ] that [an on-call] attending [physician] . . . communicate[ ] with the hospital when he [comes] 'on call.' " Whatever weight is given the allegations of this affidavit,

they do not constitute evidence that *Dr. Kazior* breached any duty voluntarily assumed by him. If the contract between the medical school and Eastern falls short of the acceptable standards of care required for supervising resident physicians practicing obstetrics and gynecology, then liability would rest with the hospital (or the medical school if it had assumed responsibility for general supervision of the residents).

To permit liability for negligent supervision to be imposed against Dr. Kazior, however, flies in the face of the cardinal principles of contract and tort law. We have long recognized that a physician may contractually limit the extent or scope of professional services to be rendered. *See Childers v. Frye*, 201 N.C. 42, 45, 158 S.E. 744, 746 (1931). In *Nash v. Royster*, 189 N.C. 408, 127 S.E. 356 (1925), we stated:

> A physician or surgeon may agree to perform an operation without undertaking or rendering himself responsible for the subsequent treatment of the case. He thus contracts against liability beyond the exercise of reasonable care, diligence and skill in the performance of the operation and for such services as are contemplated by both parties to the special or limited contract.

*Id.* at 413, 127 S.E. at 359. The *Nash* reasoning applies equally well where, as here, a private physician enters a contract to provide limited supervision of residents employed by a teaching hospital.

The majority's bold extension of tort liability to on-call physicians who have no physician-patient relationship with persons seeking medical care from a hospital because they have no personal physician will, in my opinion, chill the willingness of experienced medical practitioners to serve in that capacity. If that proves to be the case, the impact of the majority opinion will fall not upon those who have personal attending physicians, but upon those who cannot afford them. The impediment to the delivery of obstetric and gynecologic services to which I alluded in my dissent in *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 311-12, 395 S.E.2d 85, 101-02 (1990) (Meyer, J., dissenting), will be exacerbated by today's decision.

The uncontradicted evidence presented in this case shows that Dr. Kazior performed his legal duty to provide advice and assistance when telephoned by the chief resident of the obstetrics and gynecology service of the hospital. Because plaintiff failed to pro-

duce a forecast of evidence showing that Dr. Kazior breached a legal duty owed to plaintiff, the trial court properly entered summary judgment for Dr. Kazior. For these reasons, I dissent from the majority opinion and vote to reverse the decision of the Court of Appeals and remand for reinstatement of the judgment entered by the trial court.