Because I disagree with the majority opinion's holding that no physician-patient relationship was established between Dr. Stover and Lownsbury and Rebecca, I must respectfully dissent.
The majority declines to recognize a physician-patient relationship in situations where a physician had no knowledge of a patient's existence. However, once a physician-patient relationship has been established by contract, as in the present case, whether the physician actually knows that the patient is in the hospital is irrelevant.
Deposition testimony established that Dr. Stover was the attending physician on duty on January 6, 1995, that Dr. Stover had the obligation to supervise ACH's labor and delivery residents, and that Dr. Stover, as attending physician, had the duty to oversee the care of department patients. In his deposition, Dr. Stover testified that while Lownsbury was a patient in his department he was "wasting time" in the hospital staff room. EMG's managing director testified that a fully trained and credentialed physician should review each patient's chart. Further, the consent form signed by Lownsbury stated that "[t]he patient will be under the professional care of a Medical Doctor called the attending physician * * *."
Construing the evidence most strongly in favor of appellants,reasonable minds could find the existence of a physician-patientrelationship between Dr. Stover and Lownsbury and Rebecca based onthe consent form that Lownsbury signed and the EMG-ACH contract.See Schendel v. Hennepin County Medical Ctr. (Minn.App. 1992)484 N.W.2d 803. The physician-patient relationship is a consensualrelationship in which the patient knowingly seeks the physician'sassistance and in which the physician knowingly accepts the personas a patient. Tracy v. Merrell Dow Pharmaceuticals (1991)58 Ohio St.3d 147, 150. Here, Dr. Stover consented to the relationshipwhen he entered into the agreement to be the supervisoryphysician. In turn, Lownsbury consented to the relationship whenshe signed the consent form to be under the care of an attendingphysician. See Mozingo v. Pitt County Memorial Hosp. (1991),331 N.C. 182, 189, 415 S.E.2d 341, 345.[1] Dr. Stover was theonly attending physician.
Those doctors who are employed to teach, supervise, and guide residents are not only permitted but also implicitly encouraged by the rationale of the majority's decision to shield themselves from liability with bureaucratic armor. Such a result is erroneous in light of Dr. Stover's contractual agreement and the obligations arising therefrom.
Accordingly, I would reverse and remand.
[1] In Mozingo, the Supreme Court of North Carolina held that "[m]edical professionals may be held accountable when they undertake to care for a patient and their actions do not meet the standard of care for such actions as established by expert testimony." The Mozingo court explained that "in the increasingly complex modern delivery of health care, a physician who undertakes to provide on-call supervision of residents actually treating a patient may be held accountable to that patient, if the physician negligently supervises those residents and such negligent supervision proximately causes the patient's injuries."